OPINION OF THE COURT
David B. Krogmann, J.
This is a proceeding pursuant to the Sex Offender Manage *328 ment and Treatment Act (L 2007, ch 7) as set forth in article 10 of the Mental Hygiene Law which became effective April 13, 2007. Pursuant to said statute, a sex offender civil management petition dated April 16, 2007 was filed with this court. In summary, the respondent Douglas Junco, on or about December 3, 1992, was convicted in Albany County of attempted rape in the first degree (Penal Law §§ 110.00, 130.35 [1]) and assault in the second degree (Penal Law § 120.05 [6]). He was sentenced to a prison term of 7V2 to 15 years as to his attempted rape in the first degree and a concurrent term of 3V2 to 7 years pursuant to his conviction of assault in the second degree. His maximum expiration date was April 16, 2007, the same date as the petition herein. Initially, the respondent was held on a securing petition pursuant to Mental Hygiene Law § 10.06 (f) and is now being held in custody pursuant to the terms of an order to show cause dated April 16, 2007 pursuant to Mental Hygiene Law § 10.06 (h) pending the completion of a probable cause hearing and a decision of this court thereon. Mental Hygiene Legal Service, John E. Dorfman, associate attorney, has agreed to represent the interests of the respondent.
In relevant part, the petition herein alleges that the respondent is a detained sex offender; that, on March 22, 2007, Dr. Jose Gonzalez, M.D., EA.PA., after evaluating respondent’s risk for dangerousness and for sexual recidivism, issued a report, annexed to the petition, wherein he concluded that respondent has a high to very high likelihood to reoffend; that Dr. Gonzalez further found that respondent suffers from a mental abnormality; that respondent shows a persistent pattern of dangerous, aggressive behavior, which includes sexually abusive behavior which he cannot control and that respondent continues to be a danger to others and is currently in need of civil management. The petition further alleges that, pursuant to Mental Hygiene Law § 10.05 (e), on April 13, 2007, the Office of Mental Health referred respondent’s case to a case review team for evaluation and that, upon review, the case review team determined that respondent was a sex offender in need of civil management. Finally, the petition alleges that the respondent is a detained sex offender who requires civil management.
In pertinent part, Mental Hygiene Law § 10.06 (g) provides as follows:
“Within thirty days after the sex offender civil management petition is filed, or within such longer period as to which the respondent may consent, the supreme court or county court before which the pe *329 tition is pending shall conduct a hearing without a jury to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management.”
The probable cause hearing[1] commenced before this court on April 24, 2007 and continued on April 26, 2007 and April 30, 2007, concluding on May 1, 2007.[2]
Pursuant to Mental Hygiene Law § 10.03 (q), a
“ ‘[s]exual offender requiring civil management’ means a detained sex offender who suffers from a mental abnormality. A sex offender requiring civil management can, as determined by procedures set forth in this article, be either (1) a dangerous sex offender requiring confinement or (2) a sex offender requiring strict and intensive supervision.”
Mental Hygiene Law § 10.03 (i) defines mental abnormality as “a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct.”[3]
*330 The issue before the court, therefore, is whether there is probable cause to believe that the respondent is a sex offender requiring civil management.
Mental Hygiene Law § 10.03 (g) defines a “[djetained sex offender” as a
“person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person is either:
“(1) A person who stands convicted of a sex offense as defined in subdivision (p) of this section, and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense;
“(2) A person charged with a sex offense who has been determined to be an incapacitated person with respect to that offense and has been committed pursuant to article seven hundred thirty of the criminal procedure law, but did engage in the conduct constituting such offense;
“(3) A person charged with a sex offense who has been found not responsible by reason of mental disease or defect from the commission of that offense;
“(4) A person who stands convicted of a designated felony that was sexually motivated and committed prior to the effective date of this article;
“(5) A person convicted of a sex offense who is, or was at any time after September first, two thousand five, a patient in a hospital operated by the office of mental health, and who was admitted directly to such facility pursuant to article nine of this title or section four hundred two of the correction law upon release or conditional release from a correctional facility, provided that the provisions of this article shall not be deemed to shorten or lengthen the time for which such person may be held pursuant to such article or section respectively; or “(6) A person who has been determined to be a sex offender requiring civil management pursuant to this article.”
*331 Based upon the record herein, the court finds that there is probable cause to believe that the respondent is a detained sex offender.
The second and more troublesome determination which the court must make is whether the respondent is suffering from a mental abnormality. In support of the allegation that the respondent suffers from a mental abnormality, the primary testimony was that of Dr. Jose Gonzalez, M.D., F.A.P.A. Dr. Gonzalez was qualified as an expert in the field of psychiatry. He was not qualified as an expert in the field of forensic psychiatry and is not board certified as a forensic psychiatrist. Consistent with the sex offender evaluation[4] performed by Dr. Gonzalez of the respondent on March 15, 2007, he issued a report dated March 22, 2007 which contained his diagnostic findings and conclusions. The doctor arrived at the following diagnosis of the respondent:
“AXIS I: Impulse Control Disorder NOS (312.30) “Polysubstance Dependence (304.80)
“AXIS II: Antisocial Personality Disorder (301.7)
“AXIS III: None.”
He concluded as follows:
“Taking into account all of these facts, it is my professional opinion, to a reasonable degree of medical certainty that:
“(1) Mr. Junco suffers from the mental abnormality of Impulse Control Disorder NOS.
“(2) Mr. Junco shows a persistent pattern of dangerous, aggressive behavior which includes sexually abusive behavior which he cannot control and for which he has repeatedly refused to accept responsibility and repeated [sic] refused to accept treatment.
“(3) Mr. Junco continues to be a danger to others and is currently in need [of] strict and intensive supervision in an OMH Psychiatric Facility with a Sexual Offender Program and an Aggression Replacement Therapy Program.”
Although the doctor concluded that the respondent suffers from the mental abnormality of impulse control disorder NOS *332 (312.30), he further testified that although he included antisocial personality disorder (301.7) as a diagnosis in his report, he failed to conclude in the report that it was considered by him to be a mental abnormality through an “oversight.” During his testimony, Dr. Gonzalez opined that the respondent was also suffering from the mental abnormality of antisocial personality disorder.
Dr. Gonzalez opined with a reasonable degree of medical certainty that the respondent was suffering from the mental abnormality of impulse control disorder NOS and antisocial personality disorder as he defined those terms. He further testified that the disorders which the respondent suffers from predispose him to conduct constituting a sex offense, that the impulse control disorder causes the respondent difficulty in controlling his conduct and that in his opinion the respondent is predisposed to committing sexual offenses.
The court has also considered the lack of expert testimony that the respondent in the context of a mental abnormality has a condition, disease or disorder that affects the emotional, cognitive, or volitional capacity in a manner that predisposes him to the commission of conduct constituting a sex offense and that results in his having a serious difficulty in controlling such conduct.[5] Dr. Gonzalez did testify that the respondent’s condition, i.e., impulse control disorder, caused him to have difficulty in controlling his conduct. Although Dr. Gonzalez failed to opine that the respondent would have serious difficulty in controlling his conduct in the context and totality of his entire testimony, such does not prevent the court’s determination of probable cause.
The court, for the purposes of this probable cause hearing, rejects the respondent’s arguments that Dr. Gonzalez is not qualified to render the opinions expressed therein because he was not qualified as a forensic psychiatric expert. The doctor testified as an expert in the field of psychiatry for which he is board certified, and the court finds that he is qualified to render the opinions offered as to the respondent’s mental abnormality.
The respondent, however, has seriously challenged under cross-examination the opinions rendered by Dr. Gonzalez. Although such challenges have been very carefully considered by this court, they are not for the purposes of this probable cause determination sufficient to prevent a finding that there is prob *333 able cause to believe that the respondent is suffering from a mental abnormality. At trial herein, the State will be held to a more strict burden of establishing by clear and convincing evidence that the respondent is a detained sex offender who suffers from a mental abnormality.
In considering the substantial challenges made by the respondent herein to the testimony and opinions offered by Dr. Gonzalez, the court expresses its concern that although the respondent had been subjected to numerous psychiatric evaluations while in custody over a prolonged period of time (since 1992), he never was diagnosed with impulse control disorder NOS until the evaluation by Dr. Gonzalez on March 15, 2007. The court is further concerned that Dr. Gonzalez was generally not aware of the circumstances surrounding the numerous “tickets” issued to the respondent while in custody; that the doctor apparently gave some consideration to a criminal charge against the respondent in 1991 which was in effect immediately dismissed; that a determination had been made in a separate proceeding that as to the instant offense there was a lack of sexual contact; and, finally, that the doctor apparently was not provided with, nor did he therefore consider, any favorable reports submitted as to the respondent while he was in custody.
Having determined that probable cause exists, a trial pursuant to Mental Hygiene Law § 10.07 shall be scheduled by the court within 60 days of this date. The Department of Correctional Services is directed to release the respondent to the care and custody of the Office of Mental Health pursuant to Mental Hygiene Law § 10.06 (k). The respondent shall remain in the custody of the Commissioner of the Office of Mental Health and be committed to a secure treatment facility until the conclusion of the trial and subject to the further order of this court.

. It is noted that the Legislature has not otherwise defined the term “probable cause” within article 10 of the Mental Hygiene Law although provision in some detail is made within the statute and, specifically in section 10.08, as to the procedures and rules governing the probable cause hearing. For the purpose of this decision and order, the court assumes that “probable cause” requires a finding that there is reasonable cause to believe that the respondent is a sex offender requiring civil management.

. The Office of the Attorney General has maintained before the court that the Legislature intended that the probable cause hearing pursuant to Mental Hygiene Law § 10.06 (g) be “summary” in nature and that the length of this particular hearing and the scope of the testimony heard by the court created an “undue burden” upon the State and its representatives. This court specifically finds that absent further legislative direction, such probable cause hearing is not summary in nature. This is so not only because of the fact that the respondent is being held in custody under a strict statutory directive after having reached his maximum expiration date but also because the Legislature has made very specific provision as to the procedures and rules applicable to such hearings which mandate more than a “summary” proceeding. (Mental Hygiene Law § 10.08 [g].)

. The court notes that the definition of mental abnormality adopted by the New York Legislature is essentially the same as the definition included in the similar Kansas statute. (Kan Stat Ann § 59-29a02 [b].) In Kansas v Hendricks (521 US 346, 352 [1997]) the United States Supreme Court specifically found that the definition of “mental abnormality” (as included in the Kansas statute) satisfied substantive due process requirements.

. In addition to reviewing numerous documents and reports concerning the respondent, Dr. Gonzalez conducted a telepsychiatry interview of Mr. Junco which lasted approximately one hour. Incredibly, the doctor did not take any notes during the interview.

. The court notes the guidance of Kansas v Crane (534 US 407 [2002]).