OPINION OF THE COURT
Emily Pines, J.
Probable Cause Hearing Decision
This decision addresses the question whether there is probable cause to believe that the respondent, Luis Pedraza, is a “sex offender requiring civil management.” (Mental Hygiene Law § 10.06 [g].) A sex offender requiring civil management is defined in article 10 of the Mental Hygiene Law as “a detained sex offender who suffers from a mental abnormality.” (Mental Hygiene Law § 10.03 [q].) This question arises under a proceeding commenced pursuant to the recently enacted Sex Offender Management and Treatment Act, effective April 13, 2007.
Procedural History
On July 20, 2007, literally days before the respondent’s scheduled release from prison at the close of a determinate sentence of six years following a conviction for sexual abuse in the first degree (Penal Law § 130.65), the New York State Attorney General filed a petition for civil management, seeking civil commitment of the respondent. (Mental Hygiene Law § 10.06 [a].) On July 24, 2007, respondent sought removal of this proceeding to Suffolk County, the County of conviction and the transfer was effectuated by order of Justice Mark Dadd (Wyoming County). In his July 30, 2007 order, Justice Dadd appointed Mental Hygiene Legal Service to represent the respondent; directed the Department of Correctional Services to hold the respondent pending the outcome of a probable cause hearing; and found that petitioner had demonstrated “good cause” to extend the probable cause hearing beyond the 72-hour time period set forth in the statute. (Mental Hygiene Law § 10.06 [h].)
Following assignment to this Part, the court issued an order (Sept. 13, 2007) directing the Department of Correctional Services to produce the respondent for the probable cause hearing and directing that respondent be held in a local correctional facility pending the final outcome of the hearing. On September *263 14, 2007, the court granted petitioner’s application to adjourn the hearing until October 29, 2007, upon consent of the respondent, and arranged for testimony of petitioner’s psychiatric examiner by video conference.
The court allowed the State to present its expert via video conference, over respondent’s objection, rather than ordering her physical appearance for several reasons. Petitioner’s expert works in the Division of Forensic Psychology for the State Office of Mental Health, located in Albany, New York. Any relevant written report of a psychiatric examiner is admissible during the probable cause hearing without the requirement that the author be called to testify. (Mental Hygiene Law § 10.08 [g]; § 10.06 [i].) In addition, the statute advises that the hearing should be completed in one session. (Mental Hygiene Law § 10.06 [i].) While the legislature has not set forth whether this hearing should be conducted in a summary fashion, the above provisions appear to this court to provide a hint that such was intended. However, in order to aid the court in making a determination based on what is essentially expert opinion, and to allow the respondent’s counsel to cross-examine an adverse witness in full view, the court has authorized this procedure as a compromise until it is instructed otherwise.
The court is charged that it must assume that the respondent is a “sex offender” for purposes of the probable cause hearing as he stands convicted of a “sex offense,” defined in relevant part as any felony included under article 130 of the Penal Law. (Mental Hygiene Law § 10.03 [p]; § 10.06 Q].)
Testimony of Petitioner’s Expert
Christine Rackley, a licensed forensic psychologist for the New York State Office of Mental Health, testified, after being qualified as an expert in the field of psychology. The court admitted Dr. Rackley’s report in evidence. (Mental Hygiene Law § 10.08 [g].) She stated that she examined the respondent on two occasions, the second session in the presence of a bilingual social worker, due to respondent’s reportedly heavy Hispanic accent. According to Dr. Rackley, the respondent has a lengthy history of convictions for crimes involving sexual assaults of young children, including (1) a 1995 conviction in Palm Beach County, Florida, for lewd assault of a child under 16 (plaintiffs exhibit 3); (2) a 1997 Suffolk County conviction for sexual abuse in the first degree (plaintiffs exhibit 2); and (3) a 2001 Suffolk *264 County conviction for sexual abuse in the first degree, sexual abuse in the second degree and two counts of endangering the welfare of a child (plaintiffs exhibit 1). The victims in each of these offenses were very young, ranging in age from 4 to 11 years old.
Dr. Rackley reviewed records of the respondent’s several criminal convictions. In statements made to the police after his arrest for the 2001 offenses, respondent told them that he had been sexually assaulted at the age of 14 and, thereafter, found himself sexually attracted to children. He stated, in such reports, that he likes to go to parks and bus stops to watch children playing and has fantasies of seeing them naked and performing oral sex on him. In his 2001 statement to police, the respondent describes himself as getting “one of those feelings” before each of the incidents that lead to his arrests and convictions for the various sexual offenses that form his history. The history also notes that while on probation after serving a prison term in Florida for the 1995 offense, respondent fled the jurisdiction, violated the terms of his probation and was extradited back to Florida where he was resentenced to two years in prison. In addition, while serving his term for the offense that gave rise to this proceeding, the respondent was removed from a sex offender counseling program for refusing to accept responsibility for his crime and signed a statement that he refused to participate in the Gowanda Correctional Facility program for sex offenders.
Dr. Rackley testified that, during her interview with respondent, he denied any offending behavior; claimed he was convicted of crimes because he could not afford to pay for an attorney; and blamed the Gowanda Sex Offender Program for his failure to complete, stating, “They fired me.” In addition to her review of respondent’s history and her conversations with respondent, Dr. Rackley testified that she conducted an evaluation within the context of professionally accepted standards for the assessment of sex offenders. She asserted these included the following three elements: (1) characteristics that research has demonstrated to be predictive of future sexually violent acts by previously convicted sex offenders; (2) effectiveness of treatment already received relative to mitigating or aggravating respondent’s potential for sexual violence; and (3) situational considerations and circumstances unique to respondent’s aftercare services to mitigate or aggravate risk for sexual violence. Based on the above, she found re *265 spondent to be at a high risk for sexual recidivism and at a very high risk of sexual recidivism within a six-year period. On the two actuarial assessments she reviewed, Dr. Rackley found respondent was a high or very high risk for recidivism.
In addition, as set forth above, this respondent has not participated in offered treatment programs in the past. With regard to respondent’s future five years of postrelease supervision required under New York law, the psychologist suggests respondent’s past behavior, in fleeing from the Florida probation, does not bode well for future postrelease programs. Dr. Rackley testified that in reaching her conclusions she relied on both standardized statistical analyses which are utilized in her field to rate the risk associated with sex offenders; but that she also relied heavily on the actual records of this respondent’s past behavior and his comments in the interviews themselves. She found certain facts particularly relevant, including the respondent’s refusal to take responsibility for his acts after pleading guilty on three different occasions; the fact that in each case respondent performed acts of sexual aggressiveness on young children while members of their family were in close proximity; and respondent’s refusal/failure to participate in offered sex offender treatment programs.
In light of all of the above considerations, Dr. Rackley opined, with a reasonable degree of professional certainty, that the respondent suffers from a mental abnormality “that affects his emotional, cognitive, or volitional capacity in a manner that predisposes him to the commission of conduct constituting a sex offense and that results in his having serious difficulty in controlling such conduct.”
During cross-examination, Dr. Rackley admitted that there are instances where a sex offender’s behavior is “volitional” rather than being uncontrolled but she asserted that she did not believe this was the case with respect to the respondent since he was aware of and had undergone the experience of the inevitable consequences of his acts, having been caught in several instances, prosecuted and incarcerated. She did admit that there were some inconsistencies on the scoring of the two tests she reviewed as well as some arithmetical errors; however, whichever scoring method she utilized, she claimed would not change her ultimate opinion, which, as stated earlier, was based on many factors. It was her ultimate conclusion that the statistic analyses were “best guesses” in *266 and of themselves and did not constitute a fail proof formula to predict recidivism in the sex offender field.
Standard of Proof
Counsel for petitioner and respondent proffer differing interpretations of the meaning of the term “probable cause” for purposes of the Mental Hygiene Law article 10 determination. While respondent argues that the standard should be “by clear and convincing evidence” based on the standard of proof required for the ultimate determinations in article 10 proceedings, petitioner asserts that it should be “reasonable cause to believe.” Based on the wording of the statute, the court finds petitioner’s argument more persuasive and applies such standard herein. (See Matter of State of New York v Junco, 16 Misc 3d 327 [Sup Ct, Washington County 2007].) The “reasonable cause standard” has been held to be less stringent than even the “fair preponderance of the evidence” standard applied in many civil and some criminal proceedings and one itself far less stringent than the “clear and convincing” standard sought by respondent’s counsel. By analogy, the probable cause hearing in an article 10 proceeding is more closely related to a preliminary hearing than one for violation of probation in the context of a criminal proceeding. As stated in People v Torres (5 AD3d 1097 [4th Dept 2004]), the standard of proof at a preliminary hearing is whether there exists reasonable cause to believe the defendant committed a felony; whereas, the standard of proof at a probation violation hearing is whether the violation can be proven by a fair preponderance of the evidence. In that case, the court goes on to provide that the preponderance of the evidence standard, which is based on a “more likely than not” theory (CPL 410.70), is more stringent than that of “reasonable cause.” (Torres at 1098.) The issue at this hearing does not involve a violation; but, rather, whether there exists sufficient evidence to proceed to trial.
While Mental Hygiene Law article 10 was recently enacted, a similar statute in California gave rise to this very issue. The court in Cooley v Superior Ct. (29 Cal 4th 228, 57 P3d 654 [2002]) analogized the probable cause hearing in a civil commitment proceeding to the preliminary hearing in a criminal case. Accordingly, in this court’s view, the analogy to the preliminary hearing under CPL 180.70 is apt.
Based on the opinion of petitioner’s expert witness, which in turn was based upon the record of respondent’s past behavior, *267 presentence investigative reports, interviews with respondent and standardized statistical analyses, the court finds that petitioner has demonstrated that there exists “probable cause to believe that the respondent is a sex offender requiring civil management.” (Mental Hygiene Law § 10.06 [k].)