OPINION OF THE COURT
Eileen Bransten, J.
The State of New York moves to establish probable cause to believe that O.V is a “sex offender requiring civil management” pursuant to Mental Hygiene Law article 10, § 10.06 (k).
O.V opposes the motion.
Background
On December 12, 2007, this court held a hearing to ascertain whether there is probable cause to believe that O.V is a “sex offender requiring civil management.”
Initially, the State established that, on May 18, 1979, O.V was convicted of two counts of rape in the first degree and two counts of criminal possession of a weapon — a knife — in the fourth degree. He was sentenced to 10 to 25 years’ imprisonment. In November 1999, in preparation for parole release, O.V signed a sex offender registration form, in which he agreed, among other conditions, to attend a sex offender treatment program.
O.V’s parole was revoked five months after his release based on his failure to participate in the Metropolitan Health Center Sex Offender program. O.V’s excuse was “it was just impossible for him to attend because he just didn’t have time.” (Probable cause hearing transcript at 25 [Dec. 12, 2007].)
Before O.V was to be paroled a second time, he was evaluated by two psychiatrists and found to be “dangerous due to his antisocial personality disorder, polysubstance dependence and his predisposition to commit sex crimes.” (Petitioner’s exhibit 3.)
As its only witness, the State called James Hicks, M.D., a forensic psychiatrist, board certified in both psychiatry and in forensic psychiatry, who is employed at Kirby Forensic Psychiatric Center and evaluated respondent O.V in accordance with Mental Hygiene Law article 10.
Dr. Hicks explained that before meeting with O.V, he reviewed all documents relating to the case, and that after the interview, he prepared a report, which he referred to during the course of his testimony. Dr. Hicks recounted:
*919 “We spoke about the instant offense[s] which involved two rapes. We spoke about his involvement with drugs and substance abuse treatment prior to his incarceration. We spoke about events during incarceration including disciplinary incidents. We spoke about his release on parole and subsequent violation of parole five months later for failing to attend sex offender treatment as mandated. We spoke about what he considered might have motivated him to commit his sex offenses . . . We spoke about his history of suicide gestures and whether he was really suicidal at the time. And we spoke about his involvement in treatment thus far at Kirby Forensic Psychiatric Center.” (Transcript at 17-18.)
Dr. Hicks set forth that O.V informed him that he raped two women because “they reminded him of his mother.” (Transcript at 18.)
“He also said regarding the instant offense[s] that they were done out of anger. He said that he was on his way to the methadone clinic to get his methadone when he committed the offenses. Regarding what I read in the pre-sentence report about having spoken to the victims by name when he approached them, he said that it was funny that he just called out the first victim by a name, but that he didn’t really know her name. And regarding the second victim, he also denied that he had been following her around for some time or that he threatened her newborn child if she didn’t cooperate with him.” (Transcript at 19-20.)
With respect to O.V’s drug history, Dr. Hicks testified that O.V told him that he had been on methadone and was attending a methadone clinic but that “he does not believe that he needs ongoing substance treatment [or] that he is at risk to use drugs in the future.” (Transcript at 21.) O.V informed Dr. Hicks that “even though he had used drugs in prison, he didn’t consider himself to be at risk now, and that if we released him, he would be able to prove that.” (Id.)
While in prison, O.V was accused of sexually assaulting a nurse. He described the incident to Dr. Hicks as follows: “He said he was high, that he had taken an overdose of medications, and that when they started to medically evaluate him, he said, quote, my arm was to my side, my arm got between her legs, next thing I know, I got beat up.” (Transcript at 23-24.)
*920 Dr. Hicks concluded that pursuant to the Diagnostic and Statistical Manual, Fourth Revision (DSM-IV) of the American Psychiatric Association, O.V. suffers from three separate disorders: polysubstance dependence, antisocial personality disorder and paraphilia. (Transcript at 31, 34, 40.)
Dr. Hicks opined, with a reasonable degree of psychiatric certainty, that O.V suffers from polysubstance dependence, which he defined as “a severe form of being addicted to multiple substances at the same time” while meeting other specific criteria for the disease. (Transcript at 32.) Dr. Hicks stated that O.V is unable to control his urges to use drugs, which includes use of opiates. He set forth that O.V is “predisposed to commit all sorts of crimes . . . [and] he is specifically at risk to commit further sex offenses ... I believe that he does pose a danger to the community.” (Transcript at 42-43.)
Dr. Hicks further testified that in order to be diagnosed with Axis II disorder of “Antisocial Personality Disorder,” a person must be an adult and meet at least three out of seven different symptomatic and behavioral criteria. Dr. Hicks concluded that O.V “meets seven out of seven criteria for that disorder,” which are: “lack of respect for societal norms; pattern of reckless disregard for the safety of others; deceitfulness; lack of remorse and blaming others for one’s problems; irritability and impulsiveness and inability to maintain consistent employment.” (Transcript at 34-36.)
Dr. Hicks also explained that paraphilias are disorders “characterized by persistent and upsetting or difficult to control urges, related to certain sexual preoccupations.” (Transcript at 37.) He observed:
“In this case, the condition that I am concerned the respondent has, involves a sexual preoccupation and urges related to the coercive sexual acts with non-consenting others. Not everyone who engages in rape has a paraphilia certainly, but this respondent has some features that suggest he would meet criteria for a paraphilia, in the sense that he, himself said during, at the time of the instant offenses that he felt compelled to do what he was doing. He said . . . that the rapes have something to do with his feelings for his mother ....
“Most paraphilias are long-standing, chronic conditions that don’t change a whole lot throughout the life time.” (Transcript at 36-39.)
*921 Dr. Hicks relayed that the Static 99 is an actuarial instrument to help assess the risk of recidivism of sex offenders over a five-year period. Dr. Hicks elaborated that the Static 99 questionnaire consists of 10 questions that are scored pursuant to criteria set forth in a manual. The higher the score, the more likely the individual will recidivate within a five-year period. O.V’s original score of seven put him in the “high risk” category. Dr. Hicks subsequently rescored the test and “arrived at a score of nine . . . the highest you can get is 12.” (Transcript at 46.)
Dr. Hicks concluded that “more than one-third of sex offenders with scores that fell within the high risk advantage recidivate within five years.” (Transcript at 47.) He stated:
“The concern I would have is that even in a secure setting, such as prison and Kirby Psychiatric Center, the respondent continued to make threats and be involved in dangerous incidents. So I believe that he does need a secure setting to limit the risk that he might harm others.” (Transcript at 48.)
On cross-examination, Dr. Hicks acknowledged that O.V is 54 years old and that the DSM-IV provides that the symptoms of antisocial personality disorder wane after a person reaches 40. He also stated that O.V has not been on psychotropic medications and that he is not delusional. (Transcript at 63-64.) With respect to the Static 99, Dr. Hicks commented that: “Most recommend that [the] actuarial instrument be used in combination with clinical assessments by skilled clinicians who are aware of forensic principles when doing risk assessment.” (Transcript at 70.) Finally, Dr. Hicks agreed that O.V has his mother, who visited him in the hospital on a regular basis, and a brother as part of his support group.
On redirect, Dr. Hicks reiterated that he did not believe that parole supervision of O.V would be sufficient as a protection to the community. Dr. Hicks concluded with a reasonable degree of psychiatric certainty that O.V “does pose a danger to society.” (Transcript at 90.)
Analysis
Mental Hygiene Law article 10 provides that after a case review team, consisting of at least two mental health professionals (see Mental Hygiene Law § 10.05 [a]), finds that an individual is “a sex offender requiring civil management,” the Attorney General may file a sex offender civil management *922 petition in Supreme Court. (Mental Hygiene Law § 10.06 [a].) The,petition must “contain a statement or statements alleging facts of an evidentiary character tending to support the allegation that the respondent is a sex offender requiring civil management.” (Id.)
After a petition is filed, the act directs that Supreme Court “shall conduct a hearing without a jury to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management.” (Mental Hygiene Law § 10.06 [g] [emphasis added].)
At the conclusion of the hearing, if the court determines that probable cause has not been demonstrated, it must dismiss the petition and the respondent will be released. (Mental Hygiene Law § 10.06 [k].)
If, however, probable cause has been established: “(i) the court shall order that the respondent be committed to a secure treatment facility . . . (ii) the court shall set a date for trial. . . and (iii) the respondent shall not be released pending the completion of such trial.” (Mental Hygiene Law § 10.06 [k].)
At trial:
“The jury, or the court if a jury trial is waived, shall determine by clear and convincing evidence whether the respondent is a detained sex offender who suffers from a mental abnormality. The burden of proof shall be on the attorney general. A determination, if made by the jury, must be by unanimous verdict. . . .
“If the jury, or the court if a jury trial is waived, determines that the respondent is a detained sex offender who suffers from a mental abnormality, then the court shall consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision. ... If the court finds by clear and convincing evidence that the respondent has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the respondent is likely to be a danger to others and to commit sex offenses if not confined . to a secure treatment facility, then the court shall find the respondent to be a dangerous sex offender requiring confinement.” (Mental Hygiene Law § 10.07 [d], [f] [emphasis added].)
Pursuant to Mental Hygiene Law § 10.06 (k), this court must now assess whether there is “probable cause” to believe that *923 O.V is “a sex offender requiring civil management” and whether he should be held for trial. The court must analyze whether the State has sufficiently demonstrated that O.V suffers from a mental abnormality and must further make findings with respect to whether O.V “is sufficiently dangerous to require confinement and [whether] lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.” (See Mental Hygiene Legal Serv. v Spitzer, 2007 WL 4115936, *15, 2007 US Dist LEXIS 85163, *32 [SD NY 2007].)
Mental Hygiene Legal Service (MHLS) urges adoption of a high standard of proof. It argues that in the context of article 10 of the Mental Hygiene Law, a showing of “probable cause” should require establishing that it is “more likely than not” that an offender requires civil management. MHLS rejects the definition of “probable cause” that has been equated with “reasonable cause.” Where, as here, there is significant information and data for the court to consider — including the testimony of mental health professionals based on observation and test results — MHLS asserts that a “more probable than not” standard should apply. (Transcript at 94.)
In contrast, the State urges use of less stringency, relying on State of New York v Pedraza (18 Misc 3d 261 [Sup Ct, Suffolk County 2007].) In Pedraza, in the context of a Mental Hygiene Law article 10 probable cause proceeding, the court adopted the standard applicable at a preliminary hearing — namely, whether there exists “reasonable cause to believe” — explaining that all the court is inquiring into at this early stage is “whether there exists sufficient evidence to proceed to trial.” (Id. at 266 [rejecting the applicability of a “clear and convincing evidence” standard and refusing to apply a “ ‘more likely than not’ theory”]; see also Matter of State of New York v Junco, 16 Misc 3d 327, 329 n 1 [Sup Ct, Washington County 2007].)
The “reasonable cause” standard must be applied in assessing probable cause here. It is clear from the statutory scheme that when the legislature intended for a heightened standard of proof, it explicitly prescribed its applicability. (Compare Mental Hygiene Law § 10.06 [using “probable cause”], with Mental Hygiene Law § 10.07 [f] [directing that certain findings be made “by clear and convincing evidence”].) The purpose of an article 10 probable cause hearing, moreover, is simply to ensure that there is a basis for holding the respondent for trial, at which time a heightened standard of inquiry will apply. It would not make sense at this preliminary stage to impose *924 a high standard of proof similar to the one that will ultimately be used by the finder of fact after presentation of all of the evidence.
Because the State has established that there is reasonable cause to believe (1) that O.V suffers from a mental abnormality, and (2) that he “is sufficiently dangerous to require confinement” and “lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings,” probable cause has been established and O.V will be held for trial.
Mental Abnormality
The State presented substantially unrefuted evidence — Dr. Hicks’ testimony — that O.V., a sex offender, suffers from paraphilia. Dr. Hicks further concluded that O.V manifests poly-substance dependence and antisocial personality traits, possessing seven of the seven criteria for antisocial personality disorder. Based on the evidence, there is reasonable cause to believe that O.V suffers from a congenital or acquired disorder that affects his emotional, cognitive or volitional capacity.
Dangerousness and Confinement
Additionally, the State has established that there is reasonable cause to believe that O.V “is sufficiently dangerous to require confinement” and that “lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.” Based on either his score of seven or his score of nine on the Static 99, Dr. Hicks opined that O.V clearly falls into the category of “high risk” and “does pose a danger to society.” (Transcript at 90.) Dr. Hicks testified that O.V poses a risk of repeating the dangerous actions of his past. Based on this evidence, in the interests of protection of the public, O.V must be confined pending a trial. Releasing O.V now would undermine the whole purpose underlying Mental Hygiene Law article 10.
Accordingly, it is ordered that there is probable cause to believe that O.V is a sex offender requiring civil management and that he shall not be released pending his trial.