■ In the Matter of STATE OF NEW YORK, Appellant, v ANONYMOUS, Respondent. [913 NYS2d 677]—

In a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Anonymous, an alleged sex offender allegedly suffering from a mental abnormality and requiring civil management, the State of New York appeals from an order of the Supreme Court, Suffolk County (Pitts, J.), dated November 16, 2009, which, after a hearing, in effect, denied its petition for failure to demonstrate probable cause, dismissed the proceeding, and directed the release of Anonymous from the custody of the New York State Department of Correctional Services. By decision and order on motion dated November 27, 2009, this Court granted the State of New York's motion to stay the release of Anonymous pending hearing and determination of the appeal.

Ordered that the order dated November 16, 2009, is reversed, on the law, on the facts, and in the exercise of discretion, without costs or disbursements, the petition is reinstated, and the mat-

ter is remitted to the Supreme Court, Suffolk County, for further proceedings on the petition consistent herewith.

The subject of this proceeding (hereinafter the respondent) is a convicted sex offender who has served a determinate sentence of incarceration of $4^1/_2$ years, upon his conviction of attempted rape in the first degree. In April 2007 the New York State Office of Mental Health appointed a case review team (hereinafter CRT) which evaluated the respondent, and found that, although the respondent was a sex offender, he was not a sex offender requiring civil management upon his release, as provided for in Mental Hygiene Law article 10, also known as the Sex Offender Management and Treatment Act (L 2007, ch 7, § 2, eff Apr 13, 2007). On May 17, 2007, the respondent was released from prison. Less than two months after his release, the respondent violated the terms of his parole by using and possessing marijuana, and was returned to custody of the New York State Department of Correctional Services (hereinafter DOCS). Later, in anticipation of his re-release, his case was again referred to a CRT panel. Thereafter, a psychologist opined that the respondent was a sex offender who suffered from a mental abnormality and was in need of civil management. Accordingly, the Attorney General filed the instant petition pursuant to Mental Hygiene Law article 10 for the civil management of the respondent. After a probable cause hearing, as required by Mental Hygiene Law § 10.06 (g), the Supreme Court found that there was no probable cause to believe that civil management was required. The Supreme Court dismissed the proceeding, and directed the respondent's release from the custody of DOCS. We reverse.

Upon the filing of a sex offender civil management petition, pursuant to Mental Hygiene Law § 10.06 (a), the Supreme Court "shall conduct a hearing without a jury to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.06 [g]). At the conclusion of the hearing, if the Supreme Court determines that probable cause has not been demonstrated, it "shall issue an order dismissing the petition" and the respondent shall be released (Mental Hygiene Law § 10.06 [k]). In contrast, if probable cause has been established, the Supreme Court shall order that the respondent be committed to a secure treatment facility, set a date for trial, and the respondent shall not be released pending the completion of such trial (*id.*).

The term "probable cause" is not defined in Mental Hygiene Law article 10. In the context of a Mental Hygiene Law article 10 proceeding, courts have adopted the standard applicable to a

preliminary hearing in a criminal case, namely, whether there exists "reasonable cause to believe" that the sex offender requires civil management (*State of New York v Pedraza,* 18 Misc 3d 261, 266 [2007]; *see Matter of State of New York v O.V.,* 18 Misc 3d 917, 923 [2008]). Courts have rejected a heightened standard of proof such as the "clear and convincing" standard or the "fair preponderance of the evidence" standard (*see State of New York v Pedraza,* 18 Misc 3d at 266; *Matter of State of New York v O.V.,* 18 Misc 3d at 923).

We hold that it is appropriate to apply the "reasonable cause to believe" standard of proof at a probable cause hearing pursuant to Mental Hygiene Law article 10. The purpose of a probable cause hearing pursuant to Mental Hygiene Law article 10 is "simply to ensure that there is a basis for holding the respondent for trial, at which time a heightened [clear and convincing] standard of inquiry will apply," as provided under Mental Hygiene Law § 10.07 (d) (*Matter of State of New York v O.V.,* 18 Misc 3d at 923). Thus, in assessing probable cause, "[i]t would not make sense at this preliminary stage to impose a high standard of proof similar to the one that will ultimately be used by the finder of fact after presentation of all of the evidence" (*id.* at 923-924).

Applying the "reasonable cause to believe" standard of proof, the State has demonstrated that there exists "probable cause to believe that the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.06 [k]; *see Matter of State of New York v Stanley D.,* 68 AD3d 1007 [2009]; *Matter of State of New York v Derrick B.,* 68 AD3d 1124, 1125 [2009]). A sex offender requiring civil management is defined as "a detained sex offender who suffers from a mental abnormality" (Mental Hygiene Law § 10.03 [q]). Here, the State established that there is "reasonable cause to believe" *both* that the respondent is a detained sex offender and that he suffers from a mental abnormality.

The State's psychologist concluded that the respondent suffered from "a mental abnormality that (1) affect[ed] his emotional, cognitive, or volitional capacity in a manner that predispose[d] him to the commission of conduct constituting a sexual offense and (2) [was] associated with serious difficulty in controlling such conduct." At the probable cause hearing, the psychologist testified that the respondent suffered from antisocial personality disorder, which he described as a "persistent disregard for and tendency to violate the rights of others." The State's psychologist further credited the respondent "with having a criterion for impulsivity" and showing an inability to

control his behavior. The psychologist also testified regarding the respondent's history of drug and alcohol abuse, which he stated contributed to his antisocial behavior. The psychologist described the "persistent drug and alcohol use" as a "dynamic factor, risk factor for ongoing sex offender."

The psychologist found it "very significant" that the respondent first engaged in sexually deviant behavior at the age of 12 or 13 by sodomizing his then six-year-old sister. As a result of that incident, he was "adjudicated a juvenile delinquent and placed in a sex offender treatment program." The respondent's pattern of sexual misconduct continued thereafter. The record reveals that the respondent was arrested at age 19 and charged with sexual abuse in the first degree, upon allegations that he forcibly opened a woman's blouse, exposing and fondling her breast. In connection therewith, the respondent pleaded guilty to disorderly conduct. Subsequently, at age 20, he was charged with sexual misconduct, when he allegedly forcibly engaged in sexual intercourse with a woman. That incident also resulted in a conviction for which he was sentenced to eight months' incarceration. The respondent was convicted of the instant offense two months prior to his 21st birthday.

With disagree with our dissenting colleague's "[belief] that the probable cause standard . . . has not been met." We reiterate that, at this preliminary stage, the focus of the court is simply to determine "whether there exists sufficient evidence to proceed to trial" (*State of New York v Pedraza*, 18 Misc 3d at 266). In this context, the State's burden to demonstrate "probable cause" under Mental Hygiene Law article 10 was satisfied. Any alleged inconsistencies in the psychologist's testimony do not warrant a contrary finding. Accordingly, the matter must be remitted to the Supreme Court, Suffolk County, for further proceedings, including a jury trial pursuant to Mental Hygiene Law § 10.07. Rivera, J.P., Fisher and Florio, JJ., concur.

Austin, J., dissents, and votes to affirm the order of the Supreme Court, Suffolk County, with the following memorandum: I have no disagreement with applying the "reasonable cause to believe" standard, as enunciated by the majority, in a hearing "to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.06 [g]). However, in its application to the facts of this case, I respectfully disagree with the conclusion that probable cause was established.

There can be no doubt that the purpose of New York's Sex Offender Management and Treatment Act (Mental Hygiene Law art 10; hereinafter the Act) is to protect society against

"recidivistic sex offenders" who "pose a danger to society," by the promotion of "comprehensive programs of treatment and management" (Mental Hygiene Law § 10.01 [a]; *see Kansas v Hendricks*, 521 US 346, 357 [1997]). The Act does so by establishing a system of management and, in severe cases, civil commitment upon certain findings made by the court, initially as to probable cause (*see* Mental Hygiene Law § 10.06) and, thereafter, if necessary, to determine whether the respondent is a detained sex offender who suffers from a mental abnormality (*see* Mental Hygiene Law § 10.07 [a]).

The procedure employed in New York to determine whether a respondent should be subject to civil commitment is substantially similar to the Kansas Sexual Predator Act (Kan Stat Ann § 59-29a01 *et seq.*). Under such procedure, the standard for commitment must satisfy " 'substantive' due process requirements" (*Kansas v Hendricks*, 521 US at 356; *see Kansas v Crane*, 534 US 407, 409 [2002]; *see also Foucha v Louisiana*, 504 US 71, 80 [1992]; *Addington v Texas*, 441 US 418, 426-427 [1979]). The reason for applying the substantive due process standard is to assure that "[i]n cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty' " (*Addington v Texas*, 441 US at 425, quoting *Tippett v State of Md.*, 436 F2d 1153, 1166 [1971], *cert dismissed sub nom. Murel v Baltimore City Criminal Court*, 407 US 355 [1972]).

The only witness to testify at the probable cause hearing was the State's expert (hereinafter the expert), a psychiatric examiner employed by the New York State Office of Mental Health.

The expert testified that he diagnosed the respondent as suffering from antisocial personality disorder (hereinafter ASPD). He elaborated that a diagnosis of ASPD requires, inter alia, that the patient exhibit at least three of seven diagnostic criteria as set forth in the Diagnostic and Statistical Manual, Fourth Edition, Text Revision. The expert found that the respondent met the criteria of "(1) failure to conform to social norms with respect to lawful behaviors," "(3) impulsivity or failure to plan ahead," and "(6) consistent irresponsibility." However, the expert's testimony regarding two of the three criteria is so inconsistent and contradictory that it does not reasonably support his diagnosis.

With respect to his opinion that the respondent had demonstrated "consistent irresponsibility," the expert cited the respondent's limited job training and his abbreviated work history in the community. However, in the evaluation report

produced by the expert, he stated the respondent had shown him "many documents" demonstrating his search for work and housing, and had described plans to make a living and find housing upon his release. Further, on cross-examination, the expert admitted that he had not made an "organized effort" to obtain the respondent's work history, instead interpreting information received from the probation department as indicating that the respondent had an inconsistent work history. The expert conceded that it would be important to know that the respondent had worked for two years in the community, where he had "at most had four years in the community to establish a work history" before being imprisoned at the age of 20, and that "you would judge a person's responsibility who has a limited amount of time [in the community] different than . . . an older person with more opportunity." Surprisingly, the expert went on to testify that the fact that the respondent may have had a job for two of the four years he was in the community would not change his opinion. The Supreme Court correctly noted in its decision that "information concerning respondent's work history and employment training while incarcerated may not have been properly considered by [the expert] in arriving at his diagnosis."

With respect to the expert's opinion that the respondent demonstrated the diagnostic criterion of impulsivity, he cited the respondent's lack of work history evidence that he "was out of control when he committ[ed] the rape." However, the expert went on to testify to the contrary, stating that, with regard to the attempted rape for which the respondent was convicted, the respondent had engaged in a "premeditated and, in his mind, rational course of behavior," and that the pattern of the offenses committed by the respondent "shows not a loss of volitional control or impulsivity but instead a clear and rational course of behavior in an attempt to have sex."

In addition to the identified ASPD criteria to which he testified on the basis of his evaluation report, the expert added that the respondent also exhibited the criterion of deceitfulness. However, despite his invocation of the criterion of deceitfulness, the expert described the respondent as "forthright in many respects" about his most recent sex offense and in discussing his criminal history in a manner that was "forthcoming and consistent . . . with the records" that were available.

The expert also testified that even profound ASPD did not necessarily imply a predisposition to commit sexual offenses and, even with such diagnosis, more was required to satisfy the legal test for a mental abnormality (*see People v Brooks,* 19 Misc

3d 407, 412 [2008] [psychiatric manual's classification of mental illness is useful, but "does not speak to what a 'mental abnormality' is under article 10"]). The expert conceded that approximately 50% of the prison population, many of whom are confined for sex offenses, fit the diagnostic criteria for ASPD, although only 10% of those who met the definition of sex offender were referred for civil commitment.

Upon employing the STATIC-99 actuarial assessment instrument as an assessment tool, the expert found the respondent to be in a group with a high risk of recidivism, even while acknowledging that he had not scored the assessment himself and admitting that there were new norms promulgated after the assessment of the respondent, based upon two revisions which were not applied to the respondent (*see People v Santos,* 25 Misc 3d 1212[A], 2009 NY Slip Op 52040[U], *5 [2009]; *Matter of State of New York v Rosado,* 25 Misc 3d 380, 391 [2009], quoting *In re Commitment of R.S.,* 339 NJ Super 507, 540, 773 A2d 72, 92 [2001], *affd* 173 NJ 134, 801 A2d 219 [2002] [" 'Actuarial instruments do not measure psychological constructs such as personality or intelligence. In fact, they do not measure any personal attributes of the particular sex offender at all. Rather, they are simply actuarial tables—methods of organizing and interpreting a collection of historical data' "]). The expert conceded that the respondent did not fit neatly into either the high risk or low risk groups as defined by the test, which required him to "sort of split the difference somewhere between the high and low-risk level." In fact, the expert conceded that several of the criteria of the test were misapplied.

The second actuarial tool employed by the expert, the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R), had been abandoned as an assessment tool in New York as of time he employed it. Significantly, the expert, during his testimony, agreed that the MnSOST-R findings should be redacted from his report.

The expert acknowledged that the respondent had participated in and done well in sex offender treatment, and that the respondent had plans for reintegrating into the community upon his release. In addition, prior to the respondent's most recent marijuana charge, the first civil review team (hereinafter CRT) found that the respondent did not require civil management and recommended parole (*see* Mental Hygiene Law § 10.05 [f]).*

It is highly probative that when the expert was asked, "Do

---

* Pursuant to Mental Hygiene Law § 10.05, a CRT is drawn from a panel of professionals to determine whether an individual is a sex offender requiring civil management. A negative report terminates the process (*see* Mental

you feel justified in claiming that [the respondent] is unable to control his sexual conduct?" he responded, "No." Yet, in his evaluation report and during his direct examination, he stated that the respondent suffered from "a mental abnormality that [was] associated with serious difficulty in controlling [his sexual] conduct." This substantial contradiction cannot be ignored or excused as a mere harmless inconsistency. The expert's response to this critical question clearly does not place the respondent within the definition of mental abnormality under Mental Hygiene Law article 10 (*see* Mental Hygiene Law § 10.03 [i]; *Matter of State of New York v Rosado,* 25 Misc 3d at 395).

Another requisite element of the definition of mental abnormality under Mental Hygiene Law article 10 is that an individual must be "predispos[ed] . . . to the commission of conduct constituting a sex offense" (Mental Hygiene Law § 10.03 [i]). With respect to this point, the expert's testimony is directly in conflict with the statutory standard, as he stated "rather than being a person who was predisposed to commit sex offenses, [the respondent's] rap sheet suggests he is someone who actually is predisposed to commit non-sexual offenses."

The significant inconsistencies in the expert's testimony, the actuarial tests upon which he relied, and the findings of the two CRTs, for which the only significant factual difference was the respondent's marijuana possession, warranted the Supreme Court's determination that, even under the low threshold standard requiring only a "reasonable cause to believe" that a respondent is need of civil management, the State failed to meet its burden of proof (*see People v C.M.,* 23 Misc 3d 1125[A], 2009 NY Slip Op 50935[U], *6 [2009] [civil commitment inappropriate where the "trial was rife with testimony that was loose, equivocal or contradictory"]; *cf. State of New York v J.J.,* 19 Misc 3d 196 [2008]). At best, the proof was ambiguous, which warrants a finding against the party which bears the burden of proof (*see* PJI 1:23; *see e.g. Rinaldi & Sons v Wells Fargo Alarm Serv.,* 39 NY2d 191, 196 [1976] ["If, at the close of the proofs, the evidence as a matter of logical necessity is equally balanced, plaintiff has failed to meet his burden and the cause of action is not made out"]).

The trier of fact in a proceeding pursuant to Mental Hygiene Law article 10 is in the best position to evaluate the testimony and evidence presented to it (*see Matter of State of New York v Andrew O.,* 68 AD3d 1161, 1165 [2009]). Accordingly, the fact finder's determinations as to credibility and the weight to be ac-

Hygiene Law § 10.05 [f]). An affirmative finding triggers a continuation of the process (*see* Mental Hygiene Law § 10.05 [g]; § 10.06).

corded to the evidence are entitled to deference on appeal (*see Matter of Jeremiah S. [New York State Commr. of Mental Health]*, 69 AD3d 730, 732 [2010] ["(i)n reviewing a determination made by a hearing court . . . the Appellate Division may render the determination warranted by the facts, bearing in mind that in a close case, the hearing court had the advantage of seeing and hearing the witnesses"]; *see also Matter of State of New York v Shawn X.*, 69 AD3d 165, 168 [2009]; *Matter of Timothy M.*, 307 AD2d 295, 296 [2003]).

Although the expert's conclusions, on their face, satisfy the standard for finding probable cause upon which the majority relies, those conclusions do not enjoy a reasonable foundation in the totality of his testimony. Since I believe that the probable cause standard enunciated by the majority has not been met, I vote to affirm the order of the Supreme Court.