[924 NYS2d 661]

In the Matter of STATE OF NEW YORK, Respondent, v MARK S., Appellant.

Third Department, June 9, 2011

**APPEARANCES OF COUNSEL**

*Sheila Shea, Mental Hygiene Legal Service*, Albany (*Shannon L. Stockwell* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Treasure* of counsel), for respondent.

**OPINION OF THE COURT**

SPAIN, J.

Respondent has an extensive psychiatric and criminal history that includes convictions for two rapes and forcible touching involving three different female victims. In June 2003, at age 23, he was charged with rape in the third degree, sodomy in the third degree and endangering the welfare of a child for having sexual relations with a girl under the age of 17 who was living with him. According to the victim, they initially had a consensual (but illegal) sexual relationship, but respondent thereafter repeatedly forced her to have sexual contact with him against her will. Respondent claimed that it was consensual and that he believed she was 17 years old, although he admitted having been advised that she was younger. In May 2004, he entered a guilty plea to third-degree rape (*see* Penal Law § 130.25 [2]) in satisfaction of all charges, and was sentenced to five months in jail and 10 years of probation. In October 2004, while on probation, respondent was charged with forcible touching (*see* Penal Law § 130.52) for forcibly grabbing the breasts and vagina of an 18-year-old employee of his drywall business. He later entered an *Alford* plea (*see North Carolina v Alford*, 400 US 25, 37

[1970])[1] to that charge and was sentenced to a two-month jail term. In December 2004, after a hearing, respondent was classified as a risk level three sex offender under the Sex Offender Registration Act (*see* Correction Law art 6-C [hereinafter SORA]). That same month while still on probation, respondent was charged with first-degree rape for an incident in which he went with a friend to a female acquaintance's apartment and forcibly held her down and raped her in her bedroom where he had lured her by deceiving her into believing that they needed to speak privately. He again was permitted to enter an *Alford* plea to third-degree rape (*see* Penal Law § 130.25 [3] [nonconsensual]). Although he was released on parole supervision in October 2006, respondent's parole was revoked months later when he was charged with numerous instances of violating the conditions of his release, including having prohibited contact with women and viewing erotic images of women, and admitted to one parole violation charge of exchanging electronic messages with a woman.

Prior to respondent's release from prison, petitioner commenced this Mental Hygiene Law article 10 proceeding in Dutchess County, where respondent was incarcerated. After a hearing, the court determined that there was probable cause to believe that he is a sex offender requiring civil management (*see* Mental Hygiene Law § 10.06 [k]) and ordered his confinement in a secure treatment facility upon his release from prison, pending a trial. The proceedings were thereafter removed to Clinton County, where respondent waived a jury trial (*see* Mental Hygiene Law § 10.06 [b]) and, at the conclusion of a bench trial, the court determined that he suffers from a mental abnormality as defined under Mental Hygiene Law article 10 (*see* Mental Hygiene Law § 10.07 [a], [f]; § 10.03 [i]).

At the mental abnormality trial, petitioner called to testify the authors of the 2004 and 2005 presentence reports prepared prior to respondent's sentencing on the rape convictions. Joel Lord, a licensed clinical psychologist and psychiatric examiner with the Office of Mental Health, was also called by petitioner and testified that he had personally examined respondent and reviewed all of his psychiatric and social services records dating back to childhood. As well, he reviewed respondent's entire criminal history and all available information, including police

---

1. Notably, while *Alford* pleas do not require an admission of guilt, they are only accepted when the record "contains strong evidence of actual guilt" and "are no different from other guilty pleas" (*Matter of Silmon v Travis*, 95 NY2d 470, 475 [2000]).

reports, reports of uncharged crimes and victim statements, all of which he testified are customarily relied upon in his profession in forming an opinion on mental abnormality. With regard to respondent's 2004 rape conviction, Lord looked beyond the plea terms and considered the details of the underlying offense, including the victim's account—contained in a supporting deposition—that respondent forcibly sexually assaulted her, aware he was causing her pain due to a medical condition. He also considered respondent's account and that of an eyewitness. He explained that while nonconvictions are given lesser weight, the details of offenses such as these yield important information about respondent that is relevant to his diagnosis, predisposition to commit sex offenses and impulsivity. Lord diagnosed respondent with a depressive disorder and alcohol abuse, as well as an antisocial personality disorder and borderline personality disorder, and he explained how the nature of respondent's sex offenses demonstrated these latter two disorders. He opined that these disorders severely diminish respondent's ability to control impulses and predispose him to commit sex offenses (see Mental Hygiene Law § 10.03 [i]), as exhibited by his commission of sex crimes while on probation and his escalation in the use of force, all pointing toward his "appetite specifically for sex with nonconsenting [females]." Lord concluded that respondent suffers from a mental abnormality as defined in Mental Hygiene Law article 10 (see Mental Hygiene Law § 10.03 [i]) and, at the dispositional hearing, that he is a "dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.03 [e]; § 10.07 [f]).

Respondent presented the testimony of Leonard Bard, a psychologist who evaluated him and likewise reviewed all of his psychiatric, social services and criminal history records. He concluded that respondent does not suffer from a mental abnormality and disagreed with Lord's diagnoses and conclusions that the diagnoses are predictive of respondent's risk of reoffense and predispose him to reoffend. Bard testified that, while he considered the victims' accounts of the crimes, he limited his opinion only to the convictions of record because he believed it is not his role to resolve conflicting accounts of crimes. He also opined, at the dispositional hearing, that respondent is not a dangerous sex offender requiring confinement, based largely on the fact that, while detained at the secure treatment facility, he had not acted out sexually, believing that strict and intensive supervision would adequately address his risk of reoffense.

After a dispositional hearing, Supreme Court determined that respondent is a dangerous sex offender requiring confinement in a secure treatment facility in that he suffers from mental abnormalities "involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that [he] is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; § 10.07 [f]). Respondent now appeals.

On appeal, respondent argues that Supreme Court abused its discretion when it allowed into evidence, over his objections, certain documents regarding his criminal history containing inadmissible hearsay, which both psychiatric experts testified they reviewed in forming their opinions regarding his mental abnormality. Specifically, while respondent consented to the admission of his Department of Correctional Services records and the records of the secure facility where he was being detained (Central New York Psychiatric Center), he objected to the receipt in evidence of the 2004 and 2005 presentence reports that contained the victims' sworn supporting affidavits, and to his SORA records and parole revocation records. We agree with petitioner that the testimony and evidence were properly admitted.

■ Initially, while civil rules of evidence apply to Mental Hygiene Law article 10 hearings (*see* Mental Hygiene Law § 10.07 [b]), the governing statute expressly contemplates that psychiatric examiners will have access to and consider all of a "respondent's relevant medical, clinical, criminal or other records and reports" (Mental Hygiene Law § 10.08 [b]). While generally opinion evidence must be based on facts in the record or personally known to the witness (*see Bednarz v Inn On Bridges St., Inc.*, 68 AD3d 1411, 1412 [2009]), under the professional reliability exception to the hearsay rule, an expert may provide an opinion based on otherwise inadmissible hearsay, "provided it is demonstrated to be the type of material commonly relied on in the profession" (*Hinlicky v Dreyfuss*, 6 NY3d 636, 648 [2006]; *see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 726 [1984]). The documentary evidence at issue—presentence reports, SORA records and parole revocation records—was properly relied upon by Lord in forming his expert opinion because, as Lord testified without contradiction (*see People v Goldstein*, 6 NY3d 119, 125 [2005], *cert denied* 547 US 1159 [2006]; *Matter of State of New York v Motzer*, 79 AD3d 1687, 1688 [2010]), they are of the type commonly relied upon in this

setting (*see Matter of State of New York v Wilkes*, 77 AD3d 1451, 1452-1453 [2010] [parole records]; *Matter of State of New York v J.A.*, 21 Misc 3d 806, 816-817 [Sup Ct, Bronx County 2008] [presentence report]; *but see State of New York v Dove*, 18 Misc 3d 254, 256-258 [Sup Ct, Bronx County 2007]). In fact, such records have been specifically deemed reliable by Mental Hygiene Law § 10.08 (*see Matter of State of New York v Pierce*, 79 AD3d 1779, 1780 [2010], *lv denied* 16 NY3d 712 [2011] ["parole board documents, presentence reports, accusatory instruments, certificates of conviction, police reports and respondent's criminal records"]; *see also People v Mingo*, 12 NY3d 563, 572-574 [2009] [case summaries, presentence reports and victim statements are reliable hearsay admissible in SORA proceedings]).[2]

Moreover, the hearsay in issue represented only a small fraction of the evidence considered by the experts and "[did] not constitute the sole or principal basis for the expert's opinion" (*Matter of State of New York v Fox*, 79 AD3d 1782, 1783 [2010]). Lord's consideration of evidence of the facts underlying respondent's conduct beyond the crimes of conviction, upon his guilty pleas, was not improper, given that the evidence of uncharged crimes (or crimes greater than the ultimate conviction) was "relevant and not unduly prejudicial," and there is "no provision in Mental Hygiene Law article 10 that limits the proof to acts that resulted in criminal convictions when considering [respondent's mental abnormality]" (*Matter of State of New York v Shawn X.*, 69 AD3d 165, 172 [2009], *lv denied* 14 NY3d 702 [2010]; *see Matter of State of New York v Fox*, 79 AD3d at 1784).

■ We now turn to whether the documentary evidence itself was properly received in evidence to assist Supreme Court as factfinder in evaluating the experts' opinions. Initially, expert testimony based upon hearsay is ordinarily admissible under the professional reliability rule "for the limited purpose of informing the [factfinder] of the basis of the expert[s'] opinion[s] and not for the truth of the matters related" (*Matter of State of New York v Wilkes*, 77 AD3d at 1453 [internal quotation marks and citation omitted]; *see People v Wlasiuk*, 32 AD3d 674, 680 [2006], *lv dismissed* 7 NY3d 871 [2006]). The court properly admitted this testimony for the limited purpose of aiding its evaluation of the experts' psychiatric opinions. While the court—in its decision finding that respondent suffers from a

---

2. Note that "any victim's statement" (Correction Law § 168-n [3]) is admissible in SORA proceedings.

mental abnormality—concluded that there was relevant and adequate evidence in the record demonstrating that there was a nonconsensual element to respondent's rapes, recounting facts contained in the victims' supporting depositions, the court reached this conclusion for the narrow permissible purpose of concluding that these depositions were "properly considered in the formulation of professional opinions." Thus, contrary to respondent's claim, we do not find that Supreme Court erroneously relied on the hearsay statements contained in the exhibits for the truth of the matters asserted therein.

There is, of course, a recognized "distinction between the admissibility of an expert's opinion and the admissibility of the information underlying it" (*People v Goldstein*, 6 NY3d at 126). There is no clear rule on when a "proponent of an expert's opinion [may] put before the factfinder all the information, not otherwise admissible, on which the opinion is based" (*id.*). Thus, "whether evidence may become admissible solely because of its use as a basis for expert testimony remains an open question in New York" (*Hinlicky v Dreyfuss*, 6 NY3d at 648; *see Matter of State of New York v Fox*, 79 AD3d at 1783).[3] The concern is that the expert should not be made a "conduit for hearsay" (*People v Goldstein*, 6 NY3d at 126 [internal quotation marks and citation omitted]). A related concern in criminal cases is the right of a defendant under the Confrontation Clause (US Const Sixth Amend) to cross-examine declarants regarding their hearsay statements (*id.* at 127; *see Crawford v Washington*, 541 US 36 [2004]), a right not applicable in these Mental Hygiene Law article 10 civil proceedings (*see Matter of State of New York v Wilkes*, 77 AD3d at 1451-1452; *see also* Mental Hygiene Law § 10.01; *Matter of State of New York v Campany*, 77 AD3d 92, 95-98 [2010], *lv denied* 15 NY3d 713 [2010]).

With due regard to the foregoing concerns, we are not persuaded that Supreme Court, acting as factfinder at this bench trial, abused its discretion or erred as a matter of law in admitting these customarily relied-upon documentary records containing hearsay into evidence for its evaluation of the weight and credibility of the expert testimony (*see Matter of State of New York v Pierce*, 79 AD3d at 1781; *Matter of State of New*

---

**3.** Rule 703 of the Federal Rules of Evidence permits admission of "[f]acts or data that are otherwise inadmissible" when—according to the Court of Appeals—the court, in its discretion, "determines the material has probative value in aiding the jury in evaluating the expert's opinion, substantially outweighing prejudicial effect" (*Hinlicky v Dreyfuss*, 6 NY3d at 648 n 6).

*York v Craig T.*, 77 AD3d 1062, 1064 [2010]). The evidence supporting the determinations that respondent suffers from a mental abnormality and is a dangerous sex offender requiring confinement is compelling. The court's decision to disregard Bard's expert opinion to the contrary is well supported, the record does not suggest that the court placed undue or improper reliance on the hearsay contained in the admitted exhibits or used it for hearsay purposes, and the probative value of the evidence in assisting the court's understanding of respondent's mental health outweighed its prejudicial effect (*see Matter of State of New York v Wilkes*, 77 AD3d at 1453). Thus, particularly given that this was a nonjury trial at which Supreme Court is "presumed to be able to distinguish between admissible evidence and inadmissible evidence [and to abide by the limited purpose of hearsay evidence when admitted] and to render a determination based on the former" (*Matter of Backus v Clupper*, 79 AD3d 1179, 1181 [2010], *lv denied* 16 NY3d 704 [2011]), any error in the evidentiary admissions was harmless (*see Matter of State of New York v Fox*, 79 AD3d at 1784).

MERCURE, J.P., KAVANAGH, STEIN and GARRY, JJ., concur.

Ordered that the orders are affirmed, without costs.