OPINION OF THE COURT
Richter, J.
In 2007, the New York State Legislature passed the Sex Offender Management and Treatment Act, which, among other things, includes article 10 of the Mental Hygiene Law of New York State. Article 10 was created with the stated goals of: the protection of society from recidivist sex offenders, supervision of the offenders, and management of their behavior (Mental Hygiene Law § 10.01). The legislature determined that “some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses,” and that such offenders “may require long-term specialized treatment modalities to address their risk to reoffend” (§ 10.01 [b]).
In 2001, respondent-appellant was convicted after trial of four counts of first-degree sexual abuse and four counts of endangering the welfare of a child for sexually abusing his prepubescent stepson and stepdaughter. Between 1996 and 1998 respondent twice touched his stepson while he was sleeping, *84 and he touched his stepdaughter twice as well. He was sentenced to a prison term of 4 to 8 years. At the expiration of respondent’s criminal sentence, he was confined to the Kirby Forensic Psychiatric Center pending potential civil commitment proceedings. In 2007, the Attorney General filed a civil management petition against respondent under article 10 of the Mental Hygiene Law, alleging that he suffered from a mental abnormality warranting civil management. The petition was supported by Dr. Michael Kunz’s evaluation, which concluded that respondent had met the criteria for pedophilia, which is considered a mental abnormality under article 10. After the hearing, the court determined that there was probable cause to believe that respondent was a sex offender requiring civil management and ordered his confinement pending trial.
Expert testimony is a necessary component of an article 10 trial. The statute specifically allows the State to choose a psychiatric examiner who will have access to the respondent for the purposes of an exam, as well as to the respondent’s “relevant medical, clinical, criminal or other records and reports” (Mental Hygiene Law § 10.08 [b]). Further, the State shall be entitled to request
“any and all records and reports relating to the respondent’s commission or alleged commission of a sex offense, the institutional adjustment and any treatment received by such respondent, and any medical, clinical or other information relevant to a determination of whether the respondent is a sex offender requiring civil management” (§ 10.08 [c]).
The same evidentiary rules regarding hearsay that apply to the testimony of a lay witness also apply to the testimony of an expert witness. In People v Sugden (35 NY2d 453 [1974]), the Court of Appeals recognized two limited exceptions to the hearsay rule and held that an expert may rely on out-of-court material if “it is of a kind accepted in the profession as reliable in forming a professional opinion” or if it “comes from a witness subject to full cross-examination on the trial” (id. at 460-461; see also Hambsch v New York City Tr. Auth., 63 NY2d 723, 726 [1984]). The Court of Appeals further stated in Hambsch, that “[i]n order to qualify for the ‘professional reliability’ exception, there must be evidence establishing the reliability of the out-of-court material” (63 NY2d at 726).
At respondent’s article 10 trial, the State called Dr. Catherine Mortiere as an expert to provide her opinion as to whether re *85 spondent suffered from a mental abnormality predisposing him to engage in repeat sex offenses. Prior to Mortiere’s trial testimony, at respondent’s request, the court conducted a voir dire examination to determine if the professional reliability exception to the hearsay rule applied to certain material reviewed by Mortiere, which the State intended to discuss during its direct examination of the doctor. Mortiere explained that she considered numerous records, including respondent’s records from Kirby and the facility to which he was later transferred, his correctional records, his presentence report, various police records, and the reports of Dr. Kunz and Dr. Singer, respondent’s expert witness. Mortiere also testified that she relied on witness and victim statements from prior sexual attacks allegedly committed by respondent, which were contained in affidavits or incorporated into police reports. Mortiere further testified, without contradiction, that such documents are heavily relied upon in her profession and necessary in making a decision as to whether respondent suffers from a mental abnormality.
On appeal, respondent contends that the trial court erred by permitting Mortiere to testify, without limitation, as to hearsay statements that formed the basis of her opinion. It is noteworthy that during the in limine proceedings, respondent did not elicit any testimony from Mortiere to suggest that reliance on respondent’s history and information from prior victims is not a recognized method within the profession for assessing mental abnormalities. Further, respondent offered no testimony from his own expert to suggest that this was not a recognized method within the profession. Because Mortiere’s testimony that these materials are used by the profession was not refuted, the trial court properly determined that the doctor could inform the jury that she used them as a basis for her expert opinion.
Article 10 dictates that the State’s psychiatric examiner will have access to the respondent’s relevant records and is entitled to request any and all records relevant to a determination of whether the respondent is a sex offender requiring civil management (Mental Hygiene Law § 10.08 [b]). The statute, in effect, requires an expert to review the very material Mortiere considered in order to evaluate and reach a prognosis. To require a doctor to reach a prognosis without being able to explain to the jury how that determination was reached would significantly hinder the jury’s ability to assess the expert’s testimony and opinion, as well as the respondent’s ability to challenge the expert’s reasoning.
*86 Once in front of the jury, Mortiere was qualified as an expert without objection. Mortiere is a licensed forensic psychologist and has been employed at Kirby Forensic Psychiatric Center since 2002, where she treats and assesses patients, including respondent, who participated in the sex offender program at Kirby in 2007. In order to diagnose respondent when he arrived at Kirby, Mortiere relied on documents from the Department of Corrections, progress notes and her own treatment teams’ observations and evaluations. She diagnosed respondent with pedophilia, antisocial personality disorder and polysubstance dependence.
The information Mortiere relied upon was not limited to victims’ affidavits, but rather came from police reports, plea documents and conviction certificates, all of which established the reliability of the out-of-court material and are “specifically deemed reliable” by the statute (Matter of State of New York v Mark S., 87 AD3d 73, 78 [3d Dept 2011], lv denied 17 NY3d 714 [2011], citing Matter of State of New York v Pierce, 79 AD3d 1779 [4th Dept 2010], lv denied 16 NY3d 712 [2011]). Mortiere considered and testified about seven acts that were sexual in nature, in addition to the underlying offense, in which respondent either pleaded guilty to a sexual crime or was alleged to have committed a sexual crime against a female, and in some cases, against young girls. Three acts that Mortiere relied on and testified to resulted in guilty pleas. Specifically, in 1984 respondent was charged with third-degree assault after he sexually assaulted a woman in a parked car, and he pleaded guilty to the charge. In 1992 respondent was convicted of second degree sexual abuse after he raped his 23-year-old female neighbor. In 1995 respondent was charged with third-degree sexual abuse for touching two 15-year-old girls while they were staying in his home. He pleaded guilty to second-degree harassment.
Mortiere also testified regarding four acts that did not result in a charge or a conviction. Respondent asserts that the State failed to present evidence establishing the reliability of these uncharged or unproven accusations that factored into Mortiere’s expert opinion and were a part of her testimony. However, “there is no provision in Mental Hygiene Law article 10 that limits the proof to acts that resulted in criminal convictions” (Mark S., 87 AD3d at 78) [internal quotation marks omitted]). Yet, as noted by the Court of Appeals in People v Gold-stein (6 NY3d 119 [2005], cert denied 547 US 1159 [2006]), an argument can be made for “some limit on the right of the *87 proponent of an expert’s opinion to put before the factfinder all the information, not otherwise admissible, on which the opinion is based. Otherwise, a party might effectively nullify the hearsay rule by making that party’s expert a conduit for hearsay” (id. at 126 [internal quotation marks omitted]).
Here, two uncharged accusations before the jury were supported by an admission from respondent himself, and therefore were reliable. The first uncharged act occurred in 1997 when respondent called his then-wife’s 15-year-old half-sister and asked her two questions, both of which were sexual in nature. Although charges were never brought against respondent, according to Dr. Singer’s report, respondent told him that he did admit to his then-wife that he had called the teenager and had asked her one of the two sexual questions. The second act occurred in 1998 when respondent’s then-girlfriend saw him laying on top of her 15-year-old daughter and attempting to play a “tickle game” with her. Charges were brought against respondent, but were eventually dropped. However, as a condition for dropping the charges, respondent signed a parole document in which he agreed to stay away from the teenage girl. Thus, the court properly allowed the doctor to testify as to both incidents.
Two accusations, however, stemming from alleged acts in 1996 and 1999, should have been excluded because neither was supported by evidence establishing the reliability of the out-of-court material (Hambsch, 63 NY2d at 726), and the acts therefore were of questionable probative value (Matter of State of New York v Wilkes, 77 AD3d 1451 [4th Dept 2010]; Matter of State of New York v Fox, 79 AD3d 1782 [4th Dept 2010]). The 1996 act proceeded to trial, and respondent was acquitted. The 1999 act was deemed to lack sufficient evidence or corroboration, and no charges were brought.
Although Mortiere should not have been allowed to testify about the 1996 and 1999 accusations, due to reliability issues and a need to put some limit on the hearsay information put before the factfinder, the trial court’s allowance of this brief testimony was harmless error. First, the jury was informed that neither of these accusations resulted in either charges or a conviction. Additionally, “the hearsay in issue represented only a small fraction of the evidence considered by the expert and [did] not constitute the sole or principal basis for the expert’s opinion” (Mark S., 87 AD3d at 78 [internal quotation marks omitted]; see also Fox, 79 AD3d at 1783). Indeed, Mortiere’s testimony and opinion focused on the nature of the underlying *88 offense for which respondent was in custody, and respondent’s abject failure to fully participate in sex offender treatment at Kirby and the facility he was transferred to after his confinement at Kirby. Mortiere relied upon her own observations of, and interactions with, respondent as well as progress notes from other staff members, which were included in respondent’s medical records. When Mortiere did discuss respondent’s past sexual criminal acts, she gave a brief description of the facts, but then focused on respondent’s explanation of the events, his denial of his behavior and what that meant in terms of his mental condition and inability to control his behavior.
Moreover, Dr. Singer, respondent’s expert, testified that he too looked at victim statements and relied on the same information that Mortiere considered. Singer noted that Mortiere’s method was one of three methods used in their field, but that it just happened to not be the method he subscribed to. Singer never testified that prior acts, charged or uncharged, could not be used when evaluating mental abnormalities.
Finally, the trial court gave limiting instructions advising the jury that they were to “consider any testimony as to the accusations that ended in dismissal and acquittal only for the purpose of evaluating the expert’s findings and understanding the basis of their conclusions,” and that any testimony regarding out-of-court material relied upon by the experts was admitted only for the “limited purpose of informing [the jury] as to the basis of the expert’s opinions” and was not to be considered as establishing the truth of those statements. Notably, respondent did not object to these instructions, or request further limiting instructions. Thus, the jury was well aware that this testimony was admitted only for a limited purpose.
Respondent also argues that the admission of testimony regarding communications between him and Mortiere, who treated him at Kirby Forensic Psychiatric Center, violated the psychologist-patient privilege set forth under CPLR 4507. However, Mental Hygiene Law § 10.08 (c) requires the disclosure of “any and all records and reports” pertaining to, not only respondent’s sex offenses, but also his medical and clinical program, institutional adjustment, and treatment. Thus, the statute requires the disclosure of communications that would ordinarily be privileged under CPLR 4507. No reason exists to treat the doctor here differently simply because, at some point, she also provided treatment.
Accordingly, the order of the Supreme Court, New York County (Patricia Nunez, J.), entered on or about July 7, 2010, *89 which, upon a jury finding of mental abnormality, and upon a finding made after a dispositional hearing that respondent is a dangerous sex offender requiring confinement, committed him to a secure treatment facility, should be affirmed, without costs.
Mazzarelli, J.P., Catterson, DeGrasse and ManzanetDaniels, JJ., concur.
Order, Supreme Court, New York County, entered on or about July 7, 2010, unanimously affirmed, without costs.