[14 NE3d 362, 991 NYS2d 9]

In the Matter of STATE OF NEW YORK, Respondent, v CHARADA T., Appellant.

Argued March 27, 2014; decided May 8, 2014

## POINTS OF COUNSEL

*Marvin Bernstein, Mental Hygiene Legal Service*, New York City (*Deborah P. Mantell, Sadie Z. Ishee* and *Maura M. Klugman* of counsel), for appellant. I. The trial court's error in allowing the State to introduce unreliable and prejudicial accusations that respondent committed an uncharged third sexual assault in 1997 was not harmless where the information was used to establish mental abnormality and undermined the opinions of respondent's expert witness. (*Matter of State of New York v Floyd Y.*, 22 NY3d 95; *People v Crimmins*, 36 NY2d 230; *Kansas v Crane*, 534 US 407; *People v Goldstein*, 6 NY3d 119; *United States v James*, 712 F3d 79; *Matter of State of New York v Andrew O.*, 16 NY3d 841.) II. The trial court erred by allowing the State to introduce the opinions of unidentified and nonpresent staff from a prison sex offender treatment program. (*Matter of State of New York v Floyd Y.*, 22 NY3d 95; *Wagman v Bradshaw*, 292 AD2d 84; *Ainetchi v 500 W. End LLC*, 51 AD3d 513; *Matter of State of New York v Andrew O.*, 16 NY3d 841; *People v Wood*, 66 NY2d 374; *Elshaarawy v U-Haul Co. of Miss.*, 72 AD3d 878; *Erosa v Rinaldi*, 270 AD2d 384; *Flamio v State of New York*, 132 AD2d 594; *Sigue v Chemical Bank*, 284 AD2d 246.)

*Eric T. Schneiderman, Attorney General*, New York City (*Claude S. Platton, Barbara D. Underwood* and *Steven C. Wu* of counsel), for respondent. I. Supreme Court correctly allowed the State's expert to testify regarding the fourth rape recounted in the presentence report. (*People v Goldstein*, 6 NY3d 119; *Matter of State of New York v Floyd Y.*, 22 NY3d 95; *People v Mingo*, 12 NY3d 563; *People v Hicks*, 98 NY2d 185; *People v Whitehead*, 46 AD3d 715; *People v Charnoff*, 121 AD2d 734; *People v Cruickshank*, 105 AD2d 325; *People v Gensler*, 72 NY2d 239; *People v Black*, 33 AD3d 338; *Hili v Sciarrotta*, 140 F3d 210.) II. Supreme Court correctly allowed the State's expert to testify regarding evaluations of respondent's progress in sex offender treatment. (*People v Tonge*, 93 NY2d 838; *People v Rivera*, 73 NY2d 941; *People v Ford*, 69 NY2d 775; *Harvey v Mazal Am. Partners*, 79 NY2d 218; *People v Goodson*, 57 NY2d 828; *People v Gray*, 86 NY2d 10; *People v Mingo*, 12 NY3d 563; *People v Ortega*, 15 NY3d 610; *Williams v Alexander*, 309 NY 283; *People v Kohlmeyer*, 284 NY 366.)

## OPINION OF THE COURT

ABDUS-SALAAM, J.

We hold that, in this Mental Hygiene Law article 10 proceeding, Supreme Court erred by permitting an expert witness to

introduce hearsay testimony about a crime respondent Charada T. was never charged with committing, but that this error was harmless under the circumstances.

Respondent Charada T. has been convicted of committing three violent sex offenses, two of which occurred within the span of an hour. Close to midnight on September 16, 1997, respondent attacked a woman on the street in Manhattan by choking her until she lost consciousness, striking her repeatedly in the head, and forcing her to perform oral sex on him. About 40 minutes later on September 17th, respondent attacked another woman by choking her with a payphone cord and striking her in the head before penetrating her vaginally and anally. Respondent also forced the victim to perform oral sex on him while threatening her with a razor. After his arrest, respondent admitted to the police that he choked the September 16th victim and orally sodomized her. Respondent was later indicted on multiple counts related to both September 1997 offenses. He pleaded guilty to rape in the first degree (Penal Law § 130.35), sodomy (Penal Law § 130.50), and assault in the second degree (Penal Law § 120.05) in satisfaction of all charges and was sentenced to 12 years in prison.

In 2002, while respondent was serving his sentence for the 1997 convictions, DNA evidence linked him to a rape he committed on July 7, 1996 while on parole for selling drugs. In that incident, respondent lured a woman who approached him to buy drugs to a rooftop and forced her to have sex with him by punching her in the face. Respondent pleaded guilty to rape in the first degree and was sentenced to 13 years in prison.

A presentence report prepared in connection with respondent's 1997 convictions (hereinafter, 1997 presentence report) alleges that respondent committed a fourth rape within 24 hours of his other two September 1997 offenses. That record alleges that, at around 2:14 a.m. on September 18, 1997, respondent dragged a female victim between a garbage dumpster and a construction site near the Port Authority bus terminal, stripped her of her blouse and coat, choked her, and vaginally raped her. The 1997 presentence report indicates that the allegations were based on a sworn statement made by a New York City police detective who investigated respondent's offenses and spoke to the victim. Respondent never admitted to committing the fourth rape and was never charged in connection with that offense, although according to the 1997 presentence report, he admitted to police that he was in the vicinity of the Port Authority near the time of the rape for the purpose of soliciting a prostitute.

While incarcerated for his rape convictions, respondent was cited for dozens of disciplinary offenses and infractions. One incident, in which respondent was discovered hiding in the dark in the correctional officers' restroom, resulted in stalking charges and respondent's expulsion from sex offender treatment. Respondent was also placed in the special housing unit after he grabbed a female correctional officer and pulled her toward the bars of his cell while he was masturbating.

As respondent's release date approached, the State of New York (the State) commenced the instant article 10 proceeding seeking a determination that respondent is a detained sex offender requiring civil management. Prior to trial, respondent moved to preclude the State's expert witness, Dr. Roger Harris, from presenting hearsay basis testimony about the uncharged rape. The State opposed the motion, arguing that this hearsay information was reliable because it came from a presentence report, an official record mental health professionals customarily rely upon in forming opinions in article 10 proceedings. Supreme Court denied the motion, ruling that the State could elicit testimony from Dr. Harris about the uncharged rape.

Dr. Harris testified at trial that, based on his review of respondent's criminal, prison, and mental health records, he concluded that respondent suffers from a mental abnormality that predisposes him to commit sex offenses and causes him serious difficulty controlling that conduct (*see* Mental Hygiene Law § 10.03 [i]). Dr. Harris testified in detail about respondent's three rape convictions; he also stated that respondent had been accused of another "incident" near the Port Authority "about 24 hours" after the September 1997 rapes. Dr. Harris briefly described the alleged fourth rape and noted that, unlike respondent's other sex offenses, respondent had "not acknowledged" committing this crime, though he had "place[d] himself in th[e] vicinity."

Dr. Harris testified that, in his view, respondent suffers from three conditions: paraphilia not-otherwise-specified (NOS), personality disorder with antisocial traits, and alcohol abuse. In explaining how these disorders affect respondent's mental abnormality, Dr. Harris focused primarily on respondent's sex offenses that resulted in convictions, respondent's descriptions of those offenses as recounted in writings he prepared during sex offender treatment, and his prison disciplinary record. Particularly, Dr. Harris testified that, based on the brutality of respondent's rapes, his expressed sexual arousal at the violent

sexual assaulting of women, and his impulsive misconduct toward the corrections officer, respondent had violent and sadistic tendencies, as well as a lack of volitional control, which predisposed him to commit further sex offenses.

Dr. Harris described respondent's failure to complete prison sex offender treatment on three occasions between 2001 and 2010. Dr. Harris stated that near the end of respondent's second and only significant period in sex offender treatment in 2006 and 2007, treatment staff told him that his progress was not sufficient. Dr. Harris then testified, over a general objection by respondent's counsel, that he reviewed evaluations prepared by treatment providers after respondent had been "disconnected" from treatment. These evaluations stated that respondent "did not understand his sexual assault cycle" and minimized his behavior, and that his treatment had been terminated as "unsuccessful."

Respondent's expert, Dr. Don Greif, testified that he agreed with Dr. Harris that respondent suffers from alcohol abuse and personality disorder with antisocial traits, but opined that, in his view, these disorders do not prevent respondent from controlling his behavior. Dr. Greif also disagreed with the paraphilia NOS diagnosis because he concluded that respondent's sex offenses were motivated by feelings of rage and hostility, and a wish to exert power over his victims, rather than to achieve sexual arousal by coercion. According to Dr. Greif, respondent's rapes included "sadistic elements" indicating respondent "wanted to hurt his victims," but it was "not clear that his sexual arousal depended on" hurting or humiliating them. Dr. Greif also opined that, although respondent did not complete sex offender treatment, his progression through several stages and his writings indicated that he was "making an honest and full fledged attempt to come to terms with what he had done."

After the close of proof, Supreme Court instructed the jury that expert testimony about hearsay statements from respondent's records was "admitted for the limited purpose of informing you as to the basis of the expert's opinions" and should "not . . . be considered as establishing the truth of those out-of-court statements." Regarding the uncharged rape, the court reminded the jury that respondent "has never acknowledged that he committed those acts nor has he ever been convicted of those acts" and, therefore, testimony about that alleged crime should be considered only "for the purpose of evaluating the experts['] findings and understanding the basis of their conclusions."

The jury returned a verdict finding that respondent suffers from a mental abnormality. Following a dispositional hearing, Supreme Court determined that respondent is a dangerous sex offender in need of confinement and committed him to a secure treatment facility. Respondent appealed and the Appellate Division affirmed (*see Matter of State of New York v Charada T.*, 107 AD3d 528 [1st Dept 2013]). This Court granted respondent leave to appeal (22 NY3d 857 [2013]) and we now affirm.

Expert witnesses may introduce hearsay evidence to explain the basis of their opinions at an article 10 trial if "two criteria" are satisfied (*Matter of State of New York v Floyd Y.*, 22 NY3d 95, 109 [2013]). "First, the proponent must demonstrate through evidence that the hearsay is reliable. Second, the court must determine that the 'probative value in helping the jury evaluate the expert's opinion substantially outweighs its prejudicial effect' " (*id.*, citing Fed Rules Evid rule 703 [alterations omitted]). Hearsay evidence about uncharged crimes fails to meet the reliability prong of this test and must be excluded unless the underlying allegations are supported by an admission from the respondent or extrinsic evidence (*see id.* at 110).

■ Applying this standard, we conclude that the trial court abused its discretion by allowing Dr. Harris to testify about the uncharged rape. Dr. Harris based his testimony about this alleged crime on hearsay information from the 1997 presentence report. The State argues that, because this hearsay came from a presentence report, it should be deemed reliable. As we explained in *Matter of State of New York v John S.* (23 NY3d 326 [2014] [decided today]), hearsay information from a presentence report "bears certain indicia of reliability that, if supported by other reliable evidence at an article 10 trial, may warrant the admission of basis testimony about uncharged crimes"; however, the information "is not so inherently reliable that it, alone, can sustain the admission of such testimony" (*id.* at 347). Here, the allegations in the 1997 presentence report were not supported by any other evidence and, as was mentioned at several points during trial, respondent has never admitted that he committed the uncharged rape. Although the presentence report states that respondent allegedly told police that he was near the Port Authority bus terminal when that crime was committed, this statement does not constitute an admission from respondent or otherwise provide a sufficient basis of reliability (*see id.*). That the hearsay may have been derived from a sworn statement is also not enough to independently support its admis-

sion at trial. Accordingly, the hearsay basis testimony about the uncharged rape should have been excluded.

■ Nevertheless, we agree with the Appellate Division and the State that the trial court's admission of the unreliable hearsay was harmless error (*see id.*). Dr. Harris presented limited testimony about the uncharged rape, and he stated that respondent has never admitted committing this crime, a point the trial court reiterated during its jury instructions. The State's case instead focused primarily on the three violent rapes respondent was convicted of committing, his extensive disciplinary record, and failure to complete sex offender treatment, among other factors that, in Dr. Harris's opinion, demonstrated that respondent suffered from a mental abnormality. Dr. Harris's statements about the uncharged rape also did not discredit Dr. Greif's testimony, which placed less emphasis on respondent's offenses and more on his "progress" in sex offender treatment. In sum, notwithstanding the hearsay testimony about the uncharged rape, the jury had sufficient admissible evidence before it upon which to find that respondent suffers from a mental abnormality, and there is "no reasonable possibility" that, had this testimony been excluded, the jury would have reached a different verdict (*id.* at 348 [internal quotation marks omitted]; *see Matter of State of New York v Mark S.*, 87 AD3d 73, 78 [3d Dept 2011], *lv denied* 17 NY3d 714 [2011]; *Matter of State of New York v Fox*, 79 AD3d 1782, 1783 [4th Dept 2010]).

■ Finally, respondent failed to preserve his argument that the statements contained in the sex offender treatment evaluations constitute unreliable hearsay that should have been excluded at trial. Respondent's trial counsel made only a general, pro forma objection to Dr. Harris's testimony about the treatment evaluations, and when the trial judge declined to have a sidebar at that moment, counsel never pursued the objection or provided any explanation or basis for it. Counsel's general objection did not adequately alert the trial court to the hearsay arguments that respondent now raises on appeal, and these claims are therefore beyond our review (*see Harvey v Mazal Am. Partners*, 79 NY2d 218, 225 [1992]; *People v Ford*, 69 NY2d 775, 776 [1987]). We disagree with respondent that finding this issue preserved would cause no prejudice given that the State was deprived of the opportunity to rebut his evidentiary challenge at trial where the trial court could have remedied the alleged hearsay problem or at least ruled on it.

Accordingly, the Appellate Division order should be affirmed, without costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur.

Order affirmed, without costs.