OPINION OF THE COURT
Emily Pines, J.
This decision addresses the question of whether the close scrutiny required by the Court of Appeals’ decision in Matter of State of New York v Floyd Y. (22 NY3d 95 [2013]) has any applicability to the probable cause stage of an article 10 proceeding under the New York State Mental Hygiene Law. The court was presented with this question when asked to determine whether there exists probable cause to believe that the respondent, Marcello A., is a “sex offender requiring civil management” pursuant to Mental Hygiene Law § 10.06 (g). A sex offender requiring civil management is defined in article 10 of the Mental Hygiene Law as “a detained sex offender who suffers from a mental abnormality” (Mental Hygiene Law § 10.03 [q]). The instant civil proceeding pursuant to article 10 of the Mental Hygiene Law was commenced on August 18, 2014, in Dutchess County. An order of removal transferring the proceeding to Suffolk County was issued on August 19, 2014 (Peter M. Forman, J.) at the request of respondent. Counsel on behalf of respondent set forth on the record that respondent voluntarily waived his appearance at the probable cause hearing.
The sole witness appearing at the probable cause hearing was petitioner’s psychiatric examiner, who had interviewed the respondent and reviewed what were described as “all available records,” including police arrest reports, police statement forms, witness statements, presentence reports, inmate status reports, violation of release reports, a New York State Office of Mental Health sex offender risk assessment and record review, a crim *637 inal history summary report, and telephone conversations with a Suffolk County Police Officer and a sex offender counseling and treatment program director and treatment provider.
At the commencement of the hearing, respondent’s counsel made an oral application to suppress any evidence, during the probable cause hearing, to the extent that it constituted basis hearsay that would be considered both inherently unreliable and prejudicial. Respondent’s attorney cited the recent holding by the Court of Appeals in Matter of State of New York v Floyd Y. (22 NY3d 95 [2013]) and its progeny. Petitioner’s counsel opposed the application arguing that the holding of the Court of Appeals in State v Floyd Y. applies solely to the trials of article 10 proceedings and not to the initial probable cause hearing. With the consent of counsel for petitioner and respondent, and based on the fact that no prior application had been made and that the petitioner’s psychiatric examiner was present and ready to testify, the court reserved decision on the application and allowed the testimony to proceed. Of particular concern to respondent’s counsel was the inclusion in the psychiatric examiner’s report, and in her testimony, of police and witness statements concerning two arrests and related charges in 1998 and 2001 against the respondent for sex offenses within the ambit of article 10, all of which were dismissed. Based on the above application, the court has reviewed the recent case law concerning article 10 proceedings and basis hearsay.
Floyd Y and Basis Hearsay
In Matter of State of New York v Floyd Y. (22 NY3d 95 [2013]), the Court of Appeals considered the extent to which a trial court, in a Mental Hygiene Law article 10 proceeding, may admit otherwise inadmissible hearsay when it serves as the underlying basis for an expert’s opinion (i.e., basis hearsay). Although the Court determined that basis hearsay may be admissible (id.), it held that the due process protections of the Fifth and Fourteenth Amendments, as expressed by the Mathews v Eldridge (424 US 319 [1976]) balancing test, protect against the admission of hearsay evidence that is unreliable or more prejudicial than prohibitive (id.). Thus, in Mental Hygiene Law article 10 trials, basis hearsay is admissible if it satisfies two criteria: (1) the proponent must demonstrate through evidence that the hearsay is reliable; and (2) the court must determine that the probative value in helping the jury *638 evaluate the expert’s opinion substantially outweighs its prejudicial effect. (Matter of State of New York v John S., 23 NY3d 326 [2014]; Matter of State of New York v Charada T., 23 NY3d 355 [2014]; State v Floyd Y., Matter of State of New York v Walter R., 118 AD3d 714 [2d Dept 2014].)
In these cases, the Court of Appeals placed the basis hearsay often presented in article 10 cases into three categories. Where evidence of sex offenses is supported by adjudications of guilt, such as convictions or guilty pleas, it was categorized as inherently reliable and therefore admissible through expert testimony without offending due process (Matter of State of New York v John S., 23 NY3d 326 [2014]; see State v Floyd Y.). Within the same realm, the Court included hearsay containing an admission of guilt by the respondent. Such was also found to be generally reliable, where the trial court determines that the probative value of the hearsay outweighs its prejudicial effect. An expert, therefore, should be permitted to introduce basis testimony about the admission (State v John S.; State v Floyd Y.).
On the other hand, hearsay indicating that the respondent was acquitted of a sex offense was held to fail both parts of the due process test; it cannot provide the basis for reliability and is considered more prejudicial than probative on the question of the respondent’s mental abnormality (Matter of State of New York v John S., 23 NY3d 326 [2014]; State v Floyd Y.). Without other factors necessary to substantiate the accusations underlying the acquitted charges, basis testimony about an acquittal must be excluded (State v John S.; State v Floyd Y.). Similarly, hearsay evidence about uncharged crimes should be excluded if the underlying allegations are not supported by an admission from the respondent or extrinsic evidence substantiating those allegations (State v John S.; Matter of State of New York v Charada T., 23 NY3d 355 [2014]; State v Floyd Y.; see Matter of State of New York v Walter R., 118 AD3d 714 [2d Dept 2014]).
Perhaps the most problematic was the third category involving the admissibility of basis hearsay about criminal charges that resulted in neither acquittal nor conviction. Such was held to present a close question to be resolved by the trial court (Matter of State of New York v John S., 23 NY3d 326 [2014]; Matter of State of New York v Floyd Y., 22 NY3d 95 [2013]). Documentary evidence supporting such charges may provide sufficient reliability that weighs in favor of admission of the hearsay, but due process concerns remain in the absence of *639 conclusive proof of guilt (State v John S.; see State v Floyd Y.). In such instances, the trial court must scrutinize the evidence supporting the charges and ensure that the allegations are substantially more probative than prejudicial before allowing the hearsay to be admitted (State v John S.; see State v Floyd Y.).
This court reads as included within this category basis hearsay information from a presentence report. This may bear certain indicia of reliability, however, its admissibility may require support by other reliable evidence and, in such instance, may result in the admission of basis testimony about uncharged crimes (Matter of State of New York v John S., 23 NY3d 326 [2014]; Matter of State of New York v Charada T., 23 NY3d 355 [2014]). However, the information in the report is not so inherently reliable that the report alone can sustain the admission of such testimony (State v John S.; State v Charada T.).
In light of Matter of State of New York v Floyd Y. (22 NY3d 95 [2013]), and its progeny (see Matter of State of New York v John S., 23 NY3d 326 [2014]; Matter of State of New York v Charada T., 23 NY3d 355 [2014]), prior decisions on the issue of the admissibility of basis hearsay must be reexamined. Those decisions include: Matter of State of New York v Cerrick FF. (99 AD3d 1066 [3d Dept 2012] [hearsay statement regarding underlying acts of dismissed criminal charges]); Matter of State of New York v Mark S. (87 AD3d 73 [3d Dept 2011] [presentence reports, Sex Offender Registration Act records and parole revocation records]); Matter of State of New York v Pierce, 79 AD3d 1779 [4th Dept 2010] [parole board documents, presentence reports, accusatory instruments, certificates of conviction, police reports and respondent’s criminal records]); Matter of State of New York v Fox (79 AD3d 1782 [4th Dept 2010] [hearsay statements contained in documents deemed reliable under Mental Hygiene Law § 10.08, regarding uncharged and unproven acts of sexual abuse]); and Matter of State of New York v Wilkes (77 AD3d 1451 [4th Dept 2010] [parole documents deemed sufficiently reliable for use in proceedings pursuant to the Sex Offender Registration Act]).
Many of the records reviewed by the psychiatric examiner in this case, some of which she considered in her evaluation of the respondent, fall within the categories described as requiring close scrutiny. The question that the court must consider, therefore, is whether the holding of the Court of Appeals in *640 State v Floyd Y. and its progeny apply to the initial probable cause stage of an article 10 Mental Hygiene Law proceeding.
In its analysis of the admission of basis hearsay in an article 10 proceeding, the Court of Appeals in State v Floyd Y recognizes that the State acts in such proceedings through its parens patriae power to confine a respondent for treatment purposes. (Id. at 103.) Therefore, it found that the constitutional protections afforded defendants in criminal prosecutions via the Fifth and Sixth Amendments are inapplicable. (Id.) However, it thereafter noted that the due process clauses of the Fifth and Fourteenth Amendments, as expressed in Mathews v Eldridge (424 US 319 [1976]), describing a balancing test, do apply. (Floyd Y.) The Court of Appeals describes the balancing test set forth by the United States Supreme Court in Mathews v Eldridge, in analyzing the procedural protections afforded by due process. Such analysis weighs the following: (1) the private interest of the litigant; (2) the risk of erroneous deprivation in the absence of substitute procedures; and (3) the State’s interest in avoiding additional procedures (Mathews v Eldridge at 335; Floyd Y. at 105). Yet, the true analysis contained in Floyd Y involves a discussion of the benefits versus the harm of such testimony in connection with its potential effect on juries. As stated by Judge Rivera:
“In many article 10 trials, expert testimony may be the only thing a jury hears . . . Experts enter ‘upon the jury’s province, since the expert — and not the jury — draws conclusions from the facts’ . . . , and there is a correspondingly high risk that jurors will rely on unreliable material only because it was introduced by an expert. Moreover, article 10 trials inevitably involve devastating accusations. At a minimum, each and every article 10 respondent has been convicted of a sex crime. In cases like Floyd Y.’s, the facts can involve horrible offenses against children. Juries may be predisposed to doubt the convicted sex offender and believe the State’s expert. Thus, there is measurable value to a requirement that experts only introduce evidence that bears independent indicia of reliability and sufficient probative value.” (Id. at 106.)
There are no appellate decisions that discuss the applicability of Floyd Y. and its progeny in the context of the probable cause hearing, which is presided over by a judge and which is neither heard by nor presented to a jury. The trial courts which *641 have considered the issue have rejected its application to the probable cause hearing. In material prepared by Justice Daniel Conviser for the New York State Judicial Institute, he sets forth the following:
“The literal language of the Floyd Y. holding . . . applies to ‘article 10 trials’. But there are five other kinds of adversarial proceedings in Article 10 cases: probable cause hearings, initial dispositional hearings (to determine whether a respondent should be confined or released to supervision), annual review hearings to determine whether offenders who are confined should be released with or without supervision, hearings to determine whether a respondent subject to supervision should instead be confined or hearings to determine whether a respondent subject to supervision should be released without supervision.
“If the Mathews test must be used to determine the scope of expert witness testimony during Article 10 trials, it is difficult to see why that same test would not be used to determine the scope of expert testimony in other kinds of Article 10 determinations. But the results of such analyses might well be completely different in other kinds of Article 10 proceedings. This Court recently determined in a bench ruling that the precise admissibility rules set forth by Floyd Y did not apply in a probable cause hearing but that the Mathews test nevertheless had to be considered in determining the scope of expert testimony during such a proceeding.” (Daniel Conviser, Significant Case Law Interpreting the Sex Offender Management and Treatment Act [SOMTA] [Article 10 of the Mental Hygiene Law] Covering the Period Until October 22, 2014, prepared for the New York State Judicial Institute, 2014 Fall Educational Broadcasts [Oct. 30, 2014].)
Three post Floyd Y appellate cases have considered the issue of hearsay evidence in the context of phases of article 10 proceedings where no jury was present. Thus, in Matter of Brooks v State of New York (120 AD3d 1577, 1578 [4th Dept 2014]), the Court considered the issue of hearsay at the annual review hearing held by the trial court to determine whether the respondent’s confinement should be continued and found that “we conclude that Supreme Court is presumed to have properly given any hearsay statements limited legal signifi *642 canee in making its determination, and that any evidentiary error is harmless.” In Matter of State of New York v Armstrong (119 AD3d 1431, 1432 [4th Dept 2014]), the Court rejected Floyd Y. challenges to basis evidence received by the trial court in a dispositional hearing where the trial court had earlier received a copy of the psychiatric report containing the asserted unlawful basis evidence prior to the article 10 trial and stated, “[T]he court is presumed to have properly given any hearsay statements therein their limited legal significance in making its factual findings.” Even where a trial court had admitted such hearsay basis evidence at a bench trial, the Fourth Department basically made the same presumption stating that “the court is ‘presumed to be able to distinguish between admissible evidence and inadmissible evidence [and to abide by the limited purpose of hearsay evidence when admitted] and to render a determination based on the former’ ” (Matter of State of New York v Bass, 119 AD3d 1356, 1357 [4th Dept 2014] [internal quotation marks omitted]).
As the issue has not yet been addressed by the Appellate Division, Second Department, this court believes that the above precedent would apply to the probable cause stage of the article 10 process as well as those set forth in the appellate decisions above. Considering, however, the balancing test set forth in Mathews v Eldridge (424 US at 335), although the court believes the respondent has a significant interest in the litigation, it does not find that there exists at this stage the risk of erroneous deprivation of the respondent’s rights in the absence of a different procedure for the reasons set forth in Brooks v State, concerning the court’s ability to distinguish the purpose and weight to be given basis hearsay. The court finds as well that the State has a significant interest in avoiding additional procedures at this preliminary stage with the understanding that there exists the opportunity and indeed almost a requirement based upon current law, to consider such issues pretrial. Therefore, the motion to suppress testimony concerning charges against the respondent in 1998 and 2001 with regard to sex offenses involving minor females, all of which were dismissed, is denied. However, the court is mindful that the basis hearsay to which the respondent’s counsel objects should not and will not be considered by this court for the truth of the matters asserted even if, as petitioner’s counsel argued, the psychiatric examiner assumed the truth thereof. The court notes that even at certain stages of a criminal proceeding, *643 which involve not only due process considerations but also Sixth Amendment protections assertedly not present in Mental Hygiene Law article 10 proceedings, hearsay evidence can be admissible. Thus, at a preliminary parole revocation hearing, hearsay evidence is generally admissible where the alleged violation is not based upon hearsay alone (see People v Rennie, 190 AD2d 830 [2d Dept 1993], lv denied 81 NY2d 975 [1993]).
Expert Testimony
Dr. Frances Charder, who is employed by the New York State Office of Mental Health, Division of Forensics, Bureau of Sex Offender Evaluation and Community Treatment, testified as a psychiatric examiner for the State. She was qualified as an expert in the field of psychology, having performed approximately 50 initial “mental abnormality” evaluations in connection with Mental Hygiene Law article 10 proceedings since 2012. For the same reasons set forth above, concerning Dr. Charder’s hearsay testimony, the court has admitted into evidence her forensic article 10 evaluation regarding the respondent (petitioner’s exhibit 2). The witness interviewed the respondent from her office at the Manhattan Psychiatric Center, via video conference, while the respondent was at the Fishkill Correctional Facility, in July 2014. Dr. Charder testified that the contents of petitioner’s exhibit 2, described in more detail above, are documents accepted by professionals in the field of psychology and those at the NYS Office of Mental Health relative to a determination of mental abnormality as that term is defined in Mental Hygiene Law article 10.
The witness described the respondent as “sort of reticent” and uninvolved in the evaluation process but set forth that he did cooperate. She stated that she questioned him regarding the “qualifying offense” in which he was charged in 2009 with rape in the third degree of a victim less than 17 years old and promoting sexual performance by a child less than 17. She confirmed that the records state that the respondent pleaded guilty and was convicted of the first offense. In discussing both charges with the respondent, he assertedly told Dr. Charder that he and his sons were hosting a party at which several female friends of his sons attended. Once the sons were gone or went to bed, according to the respondent, one of the female friends who the reports set forth as 16 years of age, went to speak with him in his bedroom. According to the witness statements and police report, the respondent told her that he knew *644 she was 16 and offered her money if he could take nude photographs of her; that he did so and then removed his pants, stated that they should have sex and that she should film them doing so. According to the witness statements that occurred during the interview, the respondent admitted that he did have sex with the girl, that he was aware of the pictures and that they were taken, but he did not know how they later got onto a computer and were somehow broadcasted or sent out. He denied at the interview that he was aware that the victim was only 16.
With regard to the 1998 charges which were dismissed, Dr. Charder stated that she read witness statements and police statements concerning the respondent’s alleged attempt to offer money to a 9-year-old and a 12-year-old female in return for certain sex-related performances. During her interview with respondent, the witness stated that he denied the charges and stated that the girls were attempting to blackmail him in order to get their nails done in his former wife’s salon for free. Dr. Charder also testified concerning a 2001 arrest and charges of rape by forcible compulsion of a 16-year-old female as well as pictures of her taken by respondent via a hidden camera in his bathroom, that were also dismissed. According to the witness, she discussed the alleged charges with the respondent and that he admitted those statements in her documents that described a gym in his attic where 16-year-old girls would come and work out, but that he denied any of the charges from that date.
Dr. Charder also considered various non-sex offense convictions from 1973 through 2007. In 2007, the respondent was convicted of assault in the second degree and attempting to cause physical injury with a weapon or instrument. The witness considered the documentary evidence that found that the respondent ran out of the woods on Halloween night and shot two girls with a paintball gun, one of which hit one of the girls and damaged her eye. The reviewed records (petitioner’s exhibit 2) also set forth that the respondent left the scene when the parents of the girls appeared. However, Dr. Charder testified that during the interview respondent denied the entire incident and stated that he took the guilty plea because he believed one of his sons had committed the act. According to the witness, the respondent was given five years’ probation for this offense and was found to have violated the same in 2008 when his probation officer found him driving a car without a *645 license and found pornographic photographs of young girls, deemed to be less than 15, and a stun gun for which the respondent was sentenced to a one-year prison term.
According to Dr. Charder, from her review of the records, the respondent was released from prison and upon a review by the Office of Mental Health, he was given 15 years of postrelease supervision and no article 10 proceeding was recommended or commenced at that time. However, she testified that the respondent was violated while on parole, when his parole officer found him utilizing an iPad and downloading pornographic photos of young girls. He was violated in June 2013 by pleading to the charge relating to his possession of an iPad. During the interview with Dr. Charder, the respondent admitted that there were photographs of naked young girls under 15/16 found on his iPad. As a result of the violation, the respondent was resentenced. However, upon his next release, he was reviewed again, according to the witness, by the Office of Mental Health and the current proceeding was ultimately commenced.
Based upon the above, Dr. Charder diagnosed the respondent and, based upon the Diagnostic and Statistical Manual (5th ed), opined that he was suffering from: (1) other specified paraphilic disorder, specifically voyeuristic and exhibitionistic interests in sexual activity with minor females in a controlled environment, and (2) antisocial personality disorder with psychopathic features. The first category, according to the witness, was based upon the respondent’s alleged pattern of taking pictures showing himself and all involved with minor females. The second category was assertedly based upon, inter alia, the respondent’s description of having many sexual partners and having no real feelings for them; his statements that he did not know why he did some of the things he was charged with such as downloading the photos on his iPad; his asserted lack of interest in pornography which flew in the face of his history; and what she found to be a pattern of pathological lying. With regard to the respondent’s age (in his early 60s) Dr. Charder discounted this stating that the fact that he had been recently discovered with the prohibited pornography was an indication that he is what she termed “an outlier.” In addition, Dr. Charder noted that the respondent refused to participate in a sex offender treatment program while incarcerated and that although he did participate in one while on parole, such was mandatory.
Based upon all of the above, Dr. Charder found that the respondent suffers from a mental abnormality as defined under *646 Mental Hygiene Law article 10, in that he is predisposed to commit sex offenses and that he has a condition, disorder or disease that results in his having serious difficulty controlling his behavior.
During cross-examination, Dr. Charder admitted that the term “nude young females” did not include children who were prepubescent and that the term as used in this case referred in her view to females who had started to look more like women than little girls. However, she brought out that what respondent told her was that it was not the young female’s physical traits; but, rather, how he related to them that mattered. In addition, Dr. Charder stated during cross-examination that whatever the violation of parole charges might have stated, the respondent told her during the interview that the subject photographs found on his iPad were of “naked young girls.” Dr. Charder acknowledged that no criminal charges were levied against respondent as a result of what was actually found on the iPad. In addition, the witness admitted that although there were numerous parole violation charges brought against respondent, he was only found guilty of one, concerning his possession of the iPad and all the others were dismissed. (Respondent’s exhibit A.) Dr. Charder also admitted that none of the parole violation charges actually constituted a sex offense under Mental Hygiene Law article 10. With regard to the pornographic photos that were found in the respondent’s possession in relation to his probation violation in 2008, counsel brought out that although the witness characterized the photos as evidence of “acting out with young girls,” the respondent was reported as having stated that he obtained the photos online and not that he actually took the photos himself or that he met the girls in person.
Dr. Charder also stated during cross-examination that research has found that there is a linear decline in sex offending related to those over the age of 60. However, she also set forth that respondent does not fall within such category because he has continued to offend. However, again she admitted that respondent had not been found to have violated parole in connection with the photographs at issue. The witness also stated that in her diagnosis of the respondent resulting in her finding of other specified paraphilic disorder, voyeuristic and exhibitionist interest in sexual activity with minor females, she considered certain of the charges which had been dismissed. With regard to the antisocial personality disorder, although the *647 witness considered the respondent to be irresponsible, she admitted with regard to respondent’s past history, that his wife left him and that his children were thereafter living with him.
On redirect, Dr. Charder testified that the respondent told her that he currently has no contact with his family. In addition, he told her that the reason he had been looking at and downloading photographs that were found in his possession in connection with the parole violation charges, was due to the fact that his older son would not allow him to have any contact with his granddaughter. That testimony was of concern to Dr. Charder.
Probable Cause
As stated by the Appellate Division, Second Department and previously by this court, the purpose of an article 10 probable cause hearing is “to determine whether there exists sufficient evidence to proceed to trial” (Matter of State of New York v Anonymous, 79 AD3d 758, 761 [2d Dept 2010] [internal quotation marks omitted], citing State of New York v Pedraza, 18 Misc 3d 261, 266 [Sup Ct, Suffolk County 2007]). Although the probable cause standard was not defined by the legislature in Mental Hygiene Law article 10, courts have adopted the same standard applied to a preliminary hearing in a criminal case, i.e., “reasonable cause to believe” that a sex offender requires civil management and have rejected either the heightened standard of clear and convincing evidence or even the fair preponderance of the evidence (Matter of Anonymous at 760; State v Pedraza).
There is no question that the respondent’s counsel has raised significant questions regarding some of the evidence that was considered by the petitioner’s expert in reaching her diagnosis. However, as set forth above, these are in large part issues to be resolved in connection with the trial and not at this preliminary stage of the proceeding. This court recognizes that the charges from 1998 and 2001 were dismissed. However, Dr. Charder also considered both the 2009 charge and guilty plea of rape in the third degree involving a 16-year-old female as well as the respondent’s admission to her that he was aware that photographs of the sexual encounter were taken. She considered the fact that he told her, in contrast to his plea, that now he stated he was unaware of the girl’s age. She considered his charged violation of probation involving possession of pornographic photos as well as a stun gun. She *648 considered, in connection with his parole violation charges, that although only charged with possessing an iPad, he admitted to her his downloading of naked photos of young females. The witness found relevant to her diagnosis of antisocial personality disorder the respondent’s refusal to admit even some of the crimes he pleaded to, such as the age of the girl in the rape conviction and his participation in the paintball incident, injuring the victim. She also took note of his statements that he had no feelings for any females with whom he had sexual relations and had basically no interest in sex. Finally, she noted the respondent’s current anger at his inability to visit with his granddaughter. These all fall into the category of convictions of record or admissions by the respondent himself during the interview. Based on the above, the court finds sufficiently credible the conclusion of Dr. Charder that there exists reason to believe that the respondent suffers from a mental abnormality as defined under Mental Hygiene Law article 10. Under the circumstances, the presentation by the State is sufficient to allow this case to proceed to trial.
The court notes that since there have been significant issues raised on behalf of respondent in connection with the admissibility of basis hearsay, they should and will be considered by this court before the trial of this proceeding. As stated by Judge Abdus-Salam in Matter of State of New York v Charada T. (23 NY3d 355, 361 [2014]), expert witnesses may introduce hearsay evidence to explain the basis of their opinions at a trial under Mental Hygiene Law article 10 providing that two criteria are satisfied: (1) the proponent must demonstrate through evidence that the hearsay is reliable; and (2) the court must determine that the probative value in helping the jury evaluate the expert’s opinion substantially outweighs its prejudicial effect.